**UNITED STATES of America, Plaintiff,**

v.

**Ronald Renee KANTOR, et al., Defendants.**

**No. CR–87–164–JSL.**

United States District Court, C.D. California.

Nov. 6, 1987.

Ronni B. Maclaren, Los Angeles, Cal., for plaintiff.

John H. Weston, Brown, Weston & Sarno, Cathy E. Crosson, Anthony Michael Glassman, Beverly Hills, Cal., for defendants.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS THE INDICTMENT AND GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE

LETTS, District Judge.

This is a case of first impression in this Circuit. It tests the constitutional ambit of the Child Protection Act, 18 U.S.C. Section 2251 *et seq.* ("Section 2251(a)") [1]. Section 2251(a) makes it unlawful to employ persons under the age of 18 to engage in sexually explicit conduct for the purpose of filming or photography.

This case requires a determination of the extent, if any, to which defendants' knowledge of the actual age of the performer is relevant under the statute.

The one count indictment alleges:

On or about August 2, 1984, within the Central District of California, defendants RONALD RENE KANTOR and RUPERT SEBASTIAN MACNEE employed and used a minor, namely, Traci Lords, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, namely, a film entitled "Those Young Girls," with the defendants having reason to know that the film would be transported in interstate commerce and the film actually having been transported in interstate commerce.

---

1. At the time of the indictment, 18 U.S.C. section 2251(a) provided in pertinent part:

(a) Any person who employs, uses, persuades, induces, entices or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (c), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mail, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed. Section 2251(c) provided:

(c) Any individual who violates this section shall be fined no more than $100,000, or imprisoned not more than 10 years, or both, but, if such individual has a prior conviction under this section, such individual shall be fined not more than $200,000, or imprisoned not less than two years, more than 15 years, or both. Any organization which violates this section shall be fined not more than $250,000.

Section 2255(1) provided that "minor" "means any person under the age of eighteen years." Finally, at the time of the indictment, section 2255(2) provided:

(2) "sexually explicit conduct" means actual or simulated—

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sadistic or masochistic abuse; or

(E) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. Section 2251 *et seq.* (1982).

At said time and place, defendant JAMES MARVIN SOUTER, JR. aided, abetted, induced and procured the commission of the offense alleged above.

Defendants have moved to dismiss the indictment. For purposes of the motion, defendants do not contest either that they caused Lords to engage in sexually explicit conduct for the purpose of filming or that Lords was 16 years old at the time.

Defendants do contend, however, that unless Section 2251(a) is construed to require proof by the government of defendants' actual knowledge that Lords was under 18, the statute violates both the first and fifth Amendments to the Constitution. Alternatively, the defendants contend, that even if proof of their knowledge that Lords was under 18 is not constitutionally required, they must at least be permitted to show that they acted on the basis of a reasonable, good faith mistake of fact concerning Lords' age. The government has responded to the latter contention with a motion *in limine* to prevent defendants from introducing any evidence as to the state of their knowledge or belief concerning Lords' age.

The Court has concluded that both motions must be denied.[2]

## I. BACKGROUND

The issues in this case arise out of the Supreme Court's decision in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), and the 1984 amendments[3] enacted by Congress to Section 2251 *et seq.* which take the *Ferber* decision into account.[4] In *Ferber*, in considering the New York statute,[5] the Supreme Court held that the first amendment does not limit state regulation of child pornography strictly to the regulation of materials which meet the obscenity test of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 2d 419 (1973).[6] In response to *Ferber*, Congress amended Section 2251 *et seq.* to eliminate the requirement of proof that the visual depiction of a minor is obscene under the *Miller* test.[7]

The defendants urge that these amendments robbed Section 2251(a) of the minimum element of scienter required under both the fifth amendment and the first amendment. Defendants also argue that by virtue of its overbreadth, Section 2251(a) has a "chilling" effect which violates the first amendment, as construed in numerous Supreme Court decisions.

### A. The *Ferber* Opinion

Because the major issues in this case arise out of *Ferber*, it is necessary to delineate as precisely as possible some of what the Supreme Court did and did not decide in that case.

The defendants in *Ferber* mounted a twofold challenge to the constitutionality of the New York statute. First, they argued that New York did not have the power under the first amendment to prohibit the

---

**2.** It will be necessary in the course of this opinion to make repeated references which require cumbersome language for accurate identification. For ease of reading, therefore, the following terms will be used: "employ" will include "use, persuade, induce, entice and coerce;" "employer" will include any person who could be held criminally responsible for the employment of an underaged performer; "underaged performer" will mean any person who is under the specified age; "specified age" shall be the age below which a performer may not be employed to engage in defined sexual conduct; "for filming" will include any performance which involves a visual depiction of defined sexual conduct.

**3.** Child Protection Act of 1984, Pub.L. No. 98–292, 98 Stat. 204 (1984).

**4.** *See* H.R.Rep. No. 536, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin. News 492.

**5.** The phrase "New York statute," wherever it appears, will mean the sections of the New York Penal Code which were considered by the Supreme Court in *Ferber*.

**6.** *Ferber*, 458 U.S. at 754–67, 102 S.Ct. at 3353–59.

**7.** *See* H.R.Rep. No. 536, 98th Cong., 2d Sess. 2, 7, *reprinted in* 1984 U.S.Code Cong. & Admin. News 492–93, 498; *see also United States v. Freeman*, 808 F.2d 1290, 1291–92 (8th Cir.1987).

Congress also raised the specified age of underaged performers from 16 to 18. *See* H.R. Rep. No. 536, 98th Cong., 2d Sess. 7–8, *reprinted in* 1984 U.S.Code Cong. & Admin.News 492, 498–99.

dissemination of nonobscene material depicting children engaged in sexual conduct. The Supreme Court rejected that contention [8] and the scope of its decision in that regard is not at issue here. Second, the defendants urged that, even assuming that New York had the legislative power to prohibit the dissemination of nonobscene material depicting children engaged in sexual conduct, the state had exercised this power so broadly that the New York statute should be struck down facially under the first amendment "overbreadth doctrine." [9] The Supreme Court also rejected this contention.[10] Unlike the first contention, however, the scope and ramifications of the *Ferber* Court's rejection of the defendant's overbreadth argument are very much at issue here.

Although the Court in *Ferber* declined to hold that the New York statute was constitutionally invalid, the Court did not decide *how much* overbreadth would be permitted in the potential reach of a statute, before the statute would be unconstitutionally overbroad.[11] The four opinions by which the Supreme Court expressed its collective view make clear only that a majority of the members of the Court were able to reconcile other differences in principle on the basis of a shared view that the overbreadth of the New York statute was *de minimis.* Justice White, writing for the Court, expressed this view as follows:

> [W]e hold that Section 263.15 is not substantially overbroad. We consider this the paradigmatic case of a state statute whose legitimate reach dwarfs its argu-

ably impermissible application.... While the reach of the statute is directed at the hard core of child pornography, the Court of Appeals was understandably concerned that some protected expression ... would fall prey to the statute.... Yet we seriously doubt, and it has not been suggested, that these arguably impermissible applications of the statute amount to more than a tiny fraction of the materials within the statute's reach. Nor will we assume that the New York courts will widen the possibly invalid reach of the statute by giving an expansive construction to the proscription on "lewd exhibition[s] of the genitals." Under these circumstances, Section 263.-15 is "not substantially overbroad and ... whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied."

*Ferber*, 458 U.S. at 773–74, 102 S.Ct. at 3363 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 615–16, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 2908 (1973)).

Justice O'Connor and Justices Brennan and Marshall, albeit in slightly different words, explained their refusal to apply the overbreadth doctrine in *Ferber* on the basis of their conclusion that the overbreadth was *de minimis.*[12] Justice Stevens did not dispute this conclusion, but expressed a preference for refusing to consider the issue until a case arises that presents facts as to which application of the statute is overbroad.[13]

---

**8.** *Ferber,* 458 U.S. at 756–64, 102 S.Ct. at 3354–58.

**9.** *See City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 2908 (1973); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

**10.** *Ferber,* 458 U.S. at 766–74, 102 S.Ct. at 3359–63.

**11.** Indeed, the Court left to case-by-case analysis the permissible scope of a statute's potential overbreadth. *Ferber,* 458 U.S. at 773–74, 102 S.Ct. at 3363. Accordingly, this opinion addresses some of the potential overbreadth not addressed by the Court in *Ferber.*

**12.** *See Ferber,* 458 U.S. at 774–76, 102 S.Ct. at 3363–64 (O'Connor, J. concurring); *id.* at 775–77, 102 S.Ct. at 3364–65 (Brennan, J., and Marshall, J., concurring).

**13.** *See Ferber,* 458 U.S. at 777–81, 102 S.Ct. at 3365–67 (Stevens, J., concurring). This preference is expressly based on Justice Stevens' view that the form of expression affected is of a marginal nature, the potential "chilling" of which is not of great constitutional magnitude. *Id.* at 781, 102 S.Ct. at 3367. Thus, it appears that Justice Stevens' view might change as the potential overbreadth extends to more serious works.

Although none of the opinions says so directly, it seems clear from each of them that the more nearly the material would be "porno-

As can be seen from the foregoing, *Ferber* gives very little guidance for application to specific facts as to how much overbreadth must be apparent before the overbreadth doctrine will be applied.

This Court does not believe that *Ferber* provides meaningful guidance as to "what more than obscenity may be prohibited by child pornography laws," as suggested by District Court Judge West in *United States v. Reedy*, 632 F.Supp. 1415 (W.D.Okla. 1986).[14]

In the view of this Court, Judge West's salutory effort in *Reedy* to add substance to this wide open definition of "child pornography" was not successful, primarily because it was necessarily strained. The concept of "latent offensiveness," for example, is particularly difficult. Moreover, it is difficult to imagine how a jury might go about the task of determining whether an *individual picture* could not appeal to the prurient interest of *someone*, or taken alone and devoid of any other context, did or did not have serious artistic merit. Indeed, it would seem likely that, standing alone, even the most obscene photographs, by lay standards, might be susceptible to being judged by relative artistic merit. Alternatively, a most sensitive and artistic photograph by lay standards might appeal to the prurient interests of someone.

More significantly, however, Judge West's *Ferber* "test" is not successful because, by focusing on the "effect of an isolated excerpt upon a particularly susceptible person"[15] rather than the harm to the children from both doing the physical acts and the filming of the acts, such a test would permit legislative censorship of materials which would go far beyond the legitimate interest in protection of children.[16]

As previously stated,[17] this Court believes that the degree of overbreadth of potential applications which the Supreme Court will be willing to countenance before applying the overbreadth doctrine depends in large part upon how much of the overbreadth extends to materials which are well outside of the bounds of pornography by common lay understanding. On this assumption, the *Ferber* "test" as formulated in *Reedy* would permit too much overbreadth if applied to all cases.

If *Ferber* does provide a "test," it is to be found in the following language in Justice White's opinion that the offense must be:

> "limited to works that *visually* depict sexual conduct by children below a specified age. The category of 'sexual conduct' proscribed must also be suitably limited and described."[18]

---

graphic" by common lay definition, the less concerned the Court would be about the quantum of material suppressed. *See id.* at 762, 102 S.Ct. at 3357; *id.* at 776–77, 102 S.Ct. at 3364–65 (Brennan, J., and Marshall, J., concurring); *id.* at 781, 102 S.Ct. at 3367 (Stevens, J., concurring). Conversely, the larger the quantum of non-pornographic material which appears to be "chilled" by a statute's potential overbreadth, the greater the Court will be inclined to apply the overbreadth doctrine.

14. In *Reedy*, the court held that the Supreme Court in *Ferber* established an "adjusted *Miller* test." Specifically, the *Reedy* court held:

The Supreme Court adjusted the *Miller* test in *Ferber*, in order to provide the standard for determining whether a visual depiction of a minor is without First Amendment protection and a violation of Section 2251(a) as follows: a trier of fact must find

(1) the individual visual depiction, in isolation, appeals to the prurient interest of some person;

(2) the sexual contact portrayed is either patently or latently offensive; and,

(3) the individual visual depiction, in isolation, lacks serious literary, artistic, political or scientific value.

*Reedy*, 632 F.Supp. at 1421 (quoting *Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358).

15. *Reedy*, 632 F.Supp. at 1421.

16. *Cf. Roth v. United States*, 354 U.S. 476, 489, 77 S.Ct. 1304, 1131, 1 L.Ed.2d 1498 (1957) ("judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass [legitimate] material ... and so it must be rejected as unconstitutionally restrictive").

17. *See supra* note 13.

18. *Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358 (emphasis is original). This conclusion is supported by additional language in the same section of Justice White's opinion which reads, "We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection." *Id.* at 764–65, 102 S.Ct. at 3358.

## B. Issues not Addressed in *Ferber*

Before turning to the analysis of this case, it should also be noted that the Supreme Court in *Ferber* did not decide any issues of scienter[19] or whether fifth amendment due process requires that a defense be available to an employer whose violation of the statute resulted entirely from a good faith mistake concerning the actual age of the underaged performer.

In *Ferber*, it appears that the underaged victims were young children who were demonstrably under the age of 16 specified by the New York statute.[20] It does not appear, therefore, that proof of scienter by the government was an issue raised by the defendants.

Moreover, had there been a mistake of fact by the defendants in *Ferber* as to the actual age of the underaged victims, the New York statute would have recognized the defense and allowed it to be proven.[21] Accordingly, it does not appear that mistake of fact was an issue raised in *Ferber*. Because Section 2251 *et seq.* contains no counterpart of the mistake of fact provision in the New York statute, the mistake of fact issue must be addressed.

## II. FIFTH AMENDMENT ISSUES

The indictment poses two questions under the fifth amendment: (1) whether Congress can make it a crime to employ an underaged performer for filming without requiring proof of the defendant's knowledge of the actual age of the underaged performer; and (2) if Congress can make it a crime, whether it can prescribe so severe a penalty for violation as that under Section 2251(a).

## A. Definition of Criminal Conduct

■ The first question is easily answered. When Congress chooses to regulate an activity which it could abolish by making criminal in all cases, Congress, instead, is free to abolish it partially, making conduct lawful only within prescribed factual limits.

In this case, it is important to understand that the activity regulated is pornography, not the employment of children. Were it the latter, the government's position would certainly make the statute a strict liability offense. *Ferber* establishes, however, that Congress can regulate pornography for the protection of children.

When Congress proceeds in this fashion, it may leave the burden to conform one's conduct within the factually lawful bounds entirely on those who undertake the activity.[22] In such cases, therefore, whether the violator knew or should have known that he had strayed outside the lawful bounds is irrelevant.

The law abounds with examples of Congress regulating crimes which require no criminal intent for violation.[23] Here, in the context of Section 2251(a), Congress has chosen to regulate the production of visual depictions of sexually explicit conduct by prohibiting the employment of underaged performers. Absent first amendment considerations, Congress would be free to abolish the production of all such films. Analyzing Section 2251(a) solely by reference to fifth amendment due process, there would seem to be little question that Congress could impose this regulation and define defendants' conduct as criminal without requiring proof of knowledge of the age of the underaged performer.

---

**19.** *See infra* text accompanying notes 22–31.

**20.** *See Ferber,* 458 U.S. at 752, 102 S.Ct. at 3352 ("The films are devoted almost exclusively to depicting young boys masturbating.")

**21.** *See* N.Y.Penal Law Section 263.15 (McKinney 1980).

**22.** *See United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Erne,* 576 F.2d 212, 214–15 (9th Cir.1978); *see also United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.

2d 854 (1978) (noting, however, that criminal offenses requiring no *mens rea* have a "generally disfavored status").

**23.** *See, e.g., Freed,* 401 U.S. at 610, 91 S.Ct. at 1118; *United States v. International Minerals & Chem. Corp,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *United States v. Engler,* 806 F.2d 425 (3d Cir.1986); *Erne,* 576 F.2d at 212; *United States v. Ayo-Gonzales,* 536 F.2d 652 (5th Cir.1976).

## B. Severity of the Penalty

■ Defendants argue that even if the fifth amendment does not prohibit Congress from *making it a crime* to employ an underaged performer when the employer is unaware of the performer's actual age, the fifth amendment does prohibit Congress from doing so with a crime carrying so severe a penalty.

Here, the defendants find more support in the cases. There is language in many cases that due process dictates that not too severe a penalty be attached to crimes which do not require an element of criminal intent.[24]

In fact, however, the cases are not consistent. It is obvious from the cases that, regardless of the particular language, there is a balancing required between the due process interests which favor criminal intent as an element of all crimes,[25] and other societal interests which dictate that certain regulatory crimes should be defined to exclude the element of criminal intent.[26]

Not surprisingly, therefore, courts consider the appropriate penalty accorded to crimes which can be committed without criminal intent by the severity of harm to the public interest occasioned by individual violations.[27] A severe penalty[28] imposed upon error, no matter how innocent, encourages those whose mistaken acts might result in violation to provide a wide margin of error. In such cases, where Congress explicitly and unambiguously indicates that it is eliminating the requirement of criminal intent,[29] due process requirements do not severely circumscribe the power of the legislature to use severe punishment as a means to accomplish its ends.

---

**24.** *See, e.g., Lambert v. California,* 355 U.S. 225, 229–30, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957) ("Where there was no proof of the probability of ... knowledge, he may not be convicted consistently with due process."); *Morissette v. United States,* 342 U.S. 246, 256, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952) (As to legislation that does not require proof of criminal intent, "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation."); *United States v. Wulff,* 758 F.2d 1121, 1123 (6th Cir.1985); *Holdridge v. United States,* 282 F.2d 302, 310 (8th Cir.1960). Other courts have suggested that crimes defined as felonies must have some criminal intent as an element. The felony-misdemeanor distinction probably does not hold true, however, and this Court is inclined to agree with the line of cases recited in *Engler,* 806 F.2d at 433–34 ("The differences between the objective penalties of the misdemeanor and felony provisions of the Act is, for due process purposes, *de minimis.*")

**25.** *See Liparota v. United States,* 471 U.S. 419, 425–26, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) (crimes which do not require the actor to have any criminal intent are the exception to the general rules of common law jurisprudence); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

**26.** The primary justification for many non-intent regulatory crimes is to force those who embark in regulated activities to do more than what might be reasonable and instead to do everything reasonably possible. *See United States v. United States Gypsum Co.,* 438 U.S. 422, 441 n. 17, 98 S.Ct. 2864, 2876 n. 17, 57 L.Ed.2d 854 (1978) ("The possibility that those subjected to strict liability will take extraordinary care in their dealings is frequently regarded as one advantage of a rule of strict liability.")

**27.** *See International Minerals,* 402 U.S. at 564–65, 91 S.Ct. at 1701 (regulation of transportation of "corrosive liquids" including sulfuric acid; $1,000 fine and/or one year imprisonment); *Freed,* 401 U.S. at 610, 91 S.Ct. at 1118 (possession of unregistered hand grenades; $10,000 fine and/or ten years imprisonment); *Dotterweich,* 320 U.S. at 277, 64 S.Ct. at 134 (misbranded or adulterated drugs; $1,000 fine and/or one year for first offense, $10,000 fine and/or three years for subsequent offense).

Courts also consider the notice to the defendant that he is operating in a regulated area. *See, e.g., International Minerals,* 402 U.S. at 565, 91 S.Ct. at 1701 (because of the nature of the offense, "the probability of regulation is so great that anyone [who engages in the proscribed act] must be presumed to be aware of the regulation."); *Erne,* 576 F.2d at 214–15.

**28.** An example of courts balancing the public harm against the severity of penalty is found in the context of the Migratory Bird Treaty Act, 16 U.S.C. Section 703 *et seq.* In *United States v. Wulff,* 758 F.2d 1121 (6th Cir.1985), the Sixth Circuit held that the penalty under the Migratory Bird Treaty Act of two years imprisonment and $2,000 fine was unconstitutional in the absence of a *mens rea* requirement. The Third Circuit, on the other hand, in *United States v. Engler,* 806 F.2d 425 (3d Cir.1986), deemed the two year, $2,000 penalty insufficient to tilt the balance.

**29.** *Liparota v. United States,* 471 U.S. 419, 425–26, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985).

Protection of children has long been regarded in the law as one of society's highest priorities. Legislation passed for protection of children receives from the courts the widest latitude when juxtaposed against the interests protected by the various provisions of the Bill of Rights.[30]

Based upon legislative facts deemed sufficient, Congress has determined that the harms to children which are likely to follow from engaging in sexually explicit conduct for the purpose of filming are extremely severe.[31] In Congress' view, therefore, the public interest demands that producers of sexually explicit films do not just what a reasonable person would do to avoid employing an underaged performer, but rather, that they do everything reasonably possible. Hence, Congress has looked not so much to the subjective culpability of the employer, but rather to the harm to the minor as the basis for establishing the criminal sanction.

Judged solely by the standards of due process, this Court is unable to find that Congress has exceeded its lawful power.

### III. FIRST AMENDMENT ISSUES

The more difficult issues of this case arise because filmmaking is a protected form of artistic expression under the first amendment.[32] For this reason, Congress does not have the legislative power to prohibit altogether the filming of sexually explicit conduct. Under *Ferber*, however, Congress can prohibit the knowing employ-

ment of underaged performers for films which otherwise would not be prohibited under the *Miller* test.[33]

Therefore, in the wake of *Ferber*, the questions presented by the indictment under the first amendment are these:

1. Does the first amendment require the government to prove defendants' knowledge as to the actual age of the underage performer?

2. Does the societal interest in protecting children, which constitutes the justification for restricting rights otherwise secured by the first amendment, extend to persons between the ages of 16 and 18?

3. Is the definition of "sexually explicit conduct" suitably limited and described?

4. Is the potential overreach of the applications of Section 2251(a) so broad that it should be struck down facially in order to avoid its "chilling" effect on constitutionally protected speech other than that represented by "Those Young Girls"?

### A. Proof of Criminal Intent Under the First Amendment

■ Entirely apart from fifth amendment considerations, defendants urge that the first amendment requires the government to prove defendants' knowledge as to the actual age of the underage performer. This Court does not agree.

In *Ferber*, the Court's only reference to scienter reads, "[a]s with obscenity laws, criminal responsibility may not be imposed

---

**30.** The Supreme Court in *Ferber* noted:

It is evident beyond the need for elaboration that a State's interest in "safeguarding the physical and psychological well-being of a minor" is "compelling." "A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." Accordingly, we have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights. In *Prince v. Massachusetts,* [321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944)] the Court held that a statute prohibiting use of a child to distribute literature on the street was valid notwithstanding the statute's effect on a First Amendment activity. In *Ginsberg v. New York,* [390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)] we sustained a New York law protecting children from exposure to no-

nobscene literature. Most recently, we held that the Government's interest in the "well-being of its youth" justified special treatment of indecent broadcasting received by adults as well as children. *FCC v. Pacifica Foundation.* *Ferber,* 458 U.S. at 757, 102 S.Ct. at 3354–55 (citations omitted).

**31.** *See* H.R.Rep. No. 536, 98th Cong., 2d Sess. 1, *reprinted in* 1984 U.S.Code Cong. & Admin. News 492. *See also* S.Rep. No. 438, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 40, 41–54 (detailing the harms of child pornography which were the basis for the 1978 federal child pornography law).

**32.** *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

**33.** *Ferber,* 458 U.S. at 753–66, 102 S.Ct. at 3352–59.

without some element of scienter on the part of the defendant." [34] The two cases cited in support of this statement, *Smith v. California*,[35] and *Hamling v. United States*,[36] both decided in the obscenity context, generally stand for the proposition that the government is not required to show that the defendant knew that the materials are legally classified as "obscene" to have the guilty knowledge required for conviction, only that the "nature and character" of the materials is of the type that runs the risk of being obscene.[37] This, of course, is consistent with this Court's earlier analysis that if Congress can lawfully regulate an activity, it can require those who knowingly undertake the activity to know and comply with any factual restrictions on the lawful conduct of the activity.

This Court does not believe that the *Ferber* Court, in the context of the federal child pornography statute, would require the government to prove that the defendants knew they were producing "child" pornography by proving that the defendants knew the performer's actual age. It suffices for the government to prove that the defendants knew that the "nature and character" of the materials produced were sexually explicit.[38]

### B. Protection of 16 and 17 Year Olds

■ When Congress amended Section 2251 in 1984, it raised the specified age from age 16, the age specified in the New York statute, to age 18.[39]

As the specified age is progressively raised, there comes a point at which the prohibition against employing underage performers becomes a transparent means for prohibiting the performance itself.[40] That point is reached when the affected performers are sufficiently "adult" so as to be no longer the legitimate subjects of protection of "children." Congress does not have the right under the first amendment to prohibit altogether the filming of sexually explicit conduct.[41] Under *Ferber*, Congress, in the interest of the protection of "children," can prohibit the use only of those who truly are children in such performances.

In this Court's view, the societal interest in protecting 16 and 17 year old "children" begins to be strained.[42] At age 18, society

---

**34.** *Ferber,* 458 U.S. at 765, 102 S.Ct. at 3358.

**35.** 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

**36.** 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

**37.** *See Hamling,* 418 U.S. at 123, 94 S.Ct. at 2910; *Smith,* 361 U.S. at 153, 80 S.Ct. at 218.

**38.** At least two district courts have attempted to decide whether knowing the "character and content" of the sexually explicit conduct requires the defendant to know that a minor is depicted. In *United States v. Sherin,* —— F.Supp. ——, No. 86–480, (S.D.N.Y. Jan. 28, 1987), in the context of section 2252, dealing with the distribution of child pornography, the court concluded, "[t]o know the 'nature and character' of child pornography, almost by definition, one must know that it depicts children." *Id.* slip op. at 21. However, in another case, *United States v. Reedy,* 632 F.Supp. at 1422, the court held that section 2251(a) "requires [only] that a defendant act with the purpose of producing a visual depiction of sexually explicit conduct. It is, therefore, implied the defendant must know the character and content of the visual depiction. Otherwise how could the defendant purposefully make a visual depiction of sexually explicit conduct."

**39.** *See* H.R.Rep. No. 536, 98th Cong., 2d Sess. 7–8, *reprinted in* 1984 U.S.Code Cong. & Admin. News 498–99.

**40.** Setting the statutory age at 25, for example, would seem directed more to prohibiting the performance itself than to any interest in protecting actual children.

**41.** *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

**42.** Indeed, when Congress amended Section 2251 in 1984 by raising the specified age from 16 to 18, the legislative history can be interpreted as an indication of congressional intent to facilitate the prosecution of cases involving 13 to 14 year olds. *See* 129 Cong.Rec. H9780 (daily ed. Nov. 14, 1983) (statement of Rep. Pashayan) ("the bill raises to 18 years from 16 the age of children depicted in child pornography, to aid prosecutors in identifying one age of youngsters depicted in these materials while some 13– and 14–year–olds may pass for 16, they will rarely pass for 18."); *United States v. Sherin,* —— F.Supp. ——, ——, No. 86–480, slip op. at 21 (S.D.N.Y. Jan. 28, 1987) ("Congress was clearly less concerned with prosecuting cases involving 17 year olds than with making it apparent that 13 and 14 year olds were children within the law.")

would allow these persons to vote and to volunteer for a wholly foreign war.[43]

Section 2251(a) is a blanket prohibition, it brooks no exceptions. A 17 year old performer cannot volunteer to do the proscribed act, nor may the parents consent even if they believe that the performance would be in the performer's best overall interest. Congress has made the determination that there are absolutely no circumstances in which even the best collective judgment of all directly affected persons may be acted upon. This blanket legislative intrusion into the right of individual choice in an area of First Amendment expression is not to be dismissed lightly.

Nevertheless, in *Ferber*, although the specified age in the New York statute was 16, the Supreme Court was aware that similar statutes in many states proscribed the use of performers under 18.[44] None of the opinions in *Ferber* suggests that any Justice would have changed his or her view if the specified age in the New York statute had been 18. It seems safe to conclude, therefore, that so long as the proscribed "sexual conduct" were held to be "suitably limited and described," [45] the Supreme Court would not invalidate Section 2251(a) simply on the basis that it proscribes performances by persons between the ages of 16 and 18. This Court, therefore, is not free to do so.

Because Section 2251(a) applies to the filming of sexually explicit conduct of 16 and 17 year olds, however, the "suitability of the limitations and definition" [46] of "sexually explicit conduct" must be reexamined in light of the statute's expanded reach.

## C. Definition of "Sexually Explicit Conduct"

■ The definition of "sexually explicit conduct" used in Section 2251 is virtually identical to the definition of "sexual con-

duct" in the New York statute analyzed in *Ferber*. The change in the specified age from 16 to 18, however, necessitates a more careful consideration of the aspects of Section 2251(a) which are the same as the New York statute in *Ferber*, but which were not addressed in any of the various *Ferber* opinions.

### 1. "Sexual Intercourse"

First, it must be noted that the draftsman of Section 2251 has opened up the term "sexual intercourse" to very expansive interpretation. Section 2255(2) of the Child Protection Act, like the New York statute upheld in *Ferber*, provides, " 'sexually explicit conduct' means actual or simulated–(A) sexual intercourse." Unlike the New York statute, however, Section 2255 uses the term "including" and follows it with a listing of four specific sexual contacts. Congress has therefore greatly expanded the definition of sexual intercourse and the potential overbreadth encompassed within it. Conventional principles of construction suggest that, from the use of the term "including," it may be presumed that there are other acts which also fall within the definition. Indeed, Congress well may not have intended to limit the definition to the four acts listed, since one can imagine sexual contacts which, if displayed on film, would be at least as pornographic as a relatively mild version of the least offensive of the four listed acts. Although Congress left the definition open-ended by using the term "including," Congress has not established a limit on the potential overbroad reach of the definition.

Case-by-case determination of which kinds of sexual contact are within the meaning of the statute is not an inviting prospect. A few well chosen cases and strongly worded opinions cannot be expected to discourage prosecuting across a

---

**43.** Furthermore, as children reach the ages of 16 and 17, it becomes is no longer clear that Congress is protecting them from engaging in acts with which they would otherwise have no experience. This is not to suggest that there is not the potential for serious emotional trauma when the most intimate sexual acts are performed for pay in front of a camera. The balance of relevant choices to be made may change, however, as the physical acts to be

performed on film become less unnatural to the performers.

**44.** *See Ferber*, 458 U.S. at 764 n. 17, 102 S.Ct. at 3358 n. 17.

**45.** *Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358.

**46.** *Id.*

broad range of cases, none of which will be clearly controlled by earlier decisions.

## 2. "Simulated Sexual Intercourse"

Had the specified age been left at 16, one might easily have concluded that potential problems with the definition of "sexual intercourse" in Section 2251(a) would be "suitably limited," and any potential overbreadth could safely be left to a later day when these issues are raised by the facts of a particular case.

Because "simulated" sexual conduct is proscribed in Section 2251, however, even nonpornographic depictions of 16 and 17 year olds *simulating* sexual conduct may fall clearly within the statutory definition. Unlike the potential overbreadth described in the various discussions of overbreadth in *Ferber*,[47] the potential number of instances of this kind is not a "tiny fraction"[48] and the proper dividing line among cases involving the definition of "sexual conduct" is not so clear.

There seems little reason to portray children aged 15 or younger on film doing anything remotely resembling sexual intercourse, other than to produce pornographic materials. Nonpornographic exemplars of any such visual depictions are virtually unknown in any artistic form. For this reason, when dealing with 15 year olds, there may be little reason to focus on the fact that "sexually explicit conduct" is defined so to include both actual and simulated conduct. This may explain why none of the opinions in *Ferber* makes particular note of this same characteristic of the New York statute.

While the undifferentiated inclusion of simulated conduct may not substantially extend the reach of a statute which applies to children who are age 15 or younger, the same can hardly be said when the statute is extended to apply to 16 and 17 year olds.

Major motion pictures intended for mass distribution may call for the simulation of sexual intercourse, by characters portraying older teenagers, in roles which are otherwise not generally considered pornographic. When young people have reached an age where some forms of sexual intimacy can no longer be considered unnatural as experienced in their private lives, it becomes increasingly likely that some form of visual depiction, short of pornography, of these forms of intimacy will become part of serious artistic works.

The inclusion of simulated conduct suggests that the congressional objective embodied by Section 2251(a) was not limited only to the protection of children from abuse, since the inclusion of simulated conduct goes far beyond this objective. The physical acts which actors are required to perform to achieve a simulation of intercourse may be entirely innocuous, even where the simulated visual effect may be more or less lascivious. A blanket prohibition which requires that no one under the age of 18 be permitted to perform even the most innocuous physical acts, in simulation, goes well beyond Congress' legitimate interest of protecting children.

## D. Chilling Effect on Constitutionally Protected Expression

As previously indicated, *Ferber* provides limited guidance as to *how much* overbreadth would be tolerated in the interest of protection of children before the statute would unconstitutionally chill the exercise of legitimate first amendment rights. To this Court, in general terms, how much overbreadth should be tolerated depends on how clearly the permitted encroachment is necessary for the legitimate protection of children, and on how narrowly any overbreadth encroaches on expressions deemed to have marginal first amendment value.

It appears that the artistic expression involved in the film "Those Young Girls" would be among the most marginal kinds of expression protected by the first amendment.[49] There is no dispute that Lords was

---

**47.** *Ferber,* 458 U.S. at 773, 102 S.Ct. at 3363 ("some protected expression, ranging from medical textbooks to pictorials in the National Geographic.")

**48.** *Id.*

**49.** *See Ferber,* 458 U.S. at 762, 102 S.Ct. at 3357 ("The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis.*); *id.* at 781, 102 S.Ct. at 3367–68 (Stevens, J., concurring) ("Although I disagree with the Court's position that such speech is

under the specified age prescribed in Section 2251 *et seq.* Therefore, there can be no serious dispute that under *Ferber*, Congress was within its legislative power to enact a criminal statute which proscribes the act of employing underage performers in a film such as "Those Young Girls."

The potential chilling effect on films and other forms of expression depicting older teenagers simulating sexual conduct, however, makes the encroachment on protected expression broader than that considered in *Ferber*. The precise manner in which an act of sexual intimacy is portrayed on film or live performance of legitimate works may be critical to an overall understanding of the artistic expression. It is not a *de minimis* act of censorship to require that scripts involving late teenagers not depict the act at all, or that the role or scene must be played by an older person.

The preclusion of young performers from the right to compete for entire roles in nonpornographic works because a single scene may fit one of the statutory definitions should not be undertaken so lightly. Nor should the effect upon artistic expression be considered *de minimis* if all such roles must be cast with older actors, or modified so that certain scenes must be deleted or modified so that older "doubles" may be used to perform them. When the statute is applied to 16 and 17 year olds, the chilling effect not only eliminates or modifies the hard core pornographic expressions, which are in all events at the bottom end of the hierarchy of such expressions, but also may seriously affect nonpornographic expression. The overbreadth of Section 2251 is not limited simply to situations which are rare and insignificant.

It is the view of this Court, therefore, that the definition of "sexually explicit conduct" in Section 2251(a) is not "suitably limited and described" [50] in that the potential encroachment upon the first amend-

ment is not properly directed to the legitimate objectives of protection of children from the abuses of child pornography.

Were Justice White's opinion the only pronouncement of the Court in *Ferber*, this Court would conclude easily that, given the unsuitability of the description and limitations on "sexual conduct" and the chilling effect on protected expression, the potential overbreadth of Section 2251(a) is substantial, especially as compared to the potential overbreadth addressed in *Ferber*. This Court would also conclude that Section 2251 should be struck down facially, and that Congress should be sent back to the task of designing a statute, the reach of which is more clearly limited to the protection of children.

Nevertheless, considering the collective view of the Supreme Court as expressed in *all* of the various opinions in *Ferber*, that the potential overbreadth of the New York statute was *de minimis*, this Court reluctantly concludes that Section 2251(a) may not be struck down facially, at least until such time as a case is presented in which the alleged overbreadth of the statute is urged by someone affected by it.[51]

The Court will not dismiss the indictment here on the basis that Section 2251(a) violates the first amendment.

## IV. MISTAKE OF FACT DEFENSE

■ If the indictment in this case is not to be dismissed because of the facial overbreadth of Section 2251 *et seq.*, and if the defendants may be convicted without proof by the government that the defendants knew Lords' true age at the time "Those Young Girls" was filmed, the remaining question is whether the defendants will be permitted to absolve themselves from guilt by proving that they acted on the basis of a good faith, reasonable mistake of fact [52] concerning Lords' age.

---

totally without First Amendment protection, I agree that generally marginal speech does not warrant the extraordinary protection afforded by the overbreadth doctrine.").

**50.** *Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358.

**51.** See, in particular, *Ferber*, 458 U.S. at 780–81, 102 S.Ct. at 3367 (Stevens, J., concurring).

**52.** *See United States v. Barker*, 546 F.2d 940, 946 (D.C.Cir.1976) ("It is a fundamental tenet of criminal law that an honest mistake of fact negatives criminal intent, when a defendant's acts would be lawful if the facts were as he supposed them to be.")

Such a defense,[53] if permitted, would not enable defendants to escape conviction simply by establishing that Lords told them that she was 18 and that they believed her. The defense requires that the defendants prove that their mistake of fact was "reasonable, and not due to carelessness or negligence."[54]

To engraft such a defense by the construction of a statute which does not contain the defense in the statutory language comes close to the kind of judicial legislation which courts should avoid.

Where necessary to avoid the more drastic step of facial invalidation of a statute, however, the introduction of a saving construction is an accepted device.[55] For precisely this purpose, defenses of mistake of fact have been engrafted upon criminal statutes by judicial construction.[56]

As previously discussed, criminal statutes which do not require proof of criminal intent are an exception to the general principles of common law jurisprudence.[57] Moreover, severe penalties for such statutes are disfavored.[58] The creation of exceptions to due process requirements, however, may be justified when appropriately enacted. The justifications for criminal liability in the absence of criminal intent appear to be threefold: (1) where the legisla-

ture grants the privilege to engage in the activity; (2) where the deterrent effect of a severe penalty is necessary to prevent harm to the public interest; and (3) where basic notions of fairness are not upset by criminal conviction.

Before construing Section 2251 to include a mistake of fact defense, therefore, the defense must be analyzed in terms of these justifications.

## A. Legislative Grant of Privilege

Where an activity can be abolished entirely by statute, but is permitted in limited factual circumstances, any participation in the activity amounts to a privilege granted by the legislature. It is proper, therefore, for the legislature to insist that those who voluntarily exercise this privilege not go beyond its bounds, and evidence as to a mistake of fact should not be introduced.[59]

This is not the case here, however. Congress is restricted by the first amendment from entirely abolishing pornography.[60] Those who choose to make pornographic works using adult performers are not exercising any privilege which could have been withheld by Congress; rather, the privilege is one granted by the Constitution. Those who forego the activity entirely, or those who engage in the activity only with wide

---

**53.** "Instead of speaking of ignorance or mistake of fact ... as a defense, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of the particular offense.... Yet, the practice has developed of dealing with such mistakes as a matter of defense, perhaps because the facts showing their existence are usually brought out by the defendant" W. LaFave & A. Scott, *Handbook on Criminal Law* Section 47, at 356–57 (1972).

**54.** 21 Am.Jur.2d *Criminal Law* Section 141 (1981). The reasonableness test, therefore, would require an examination of all the circumstances under which the defendants' beliefs were formed, including the level of investigation made as to her age, and whether the belief arrived at was honest and in good faith.

**55.** *Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24 ("When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject

to such a limiting construction.") (citations omitted).

**56.** *See, e.g., United States v. Feola,* 420 U.S. 671, 685–86, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975) ("We are not to be understood as implying that the defendant's state of knowledge is never a relevant consideration under Section 111.... an honest mistake of fact would not be consistent with criminal intent.")

**57.** *See Liparota v. United States,* 471 U.S. 419, 425–26, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) ("criminal offenses requiring no *mens rea* have a 'generally disfavored status.'")

**58.** *Morissette v. United States,* 342 U.S. 246, 256, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952).

**59.** *See, e.g., United States v. Ayo–Gonzales,* 536 F.2d 652 (5th Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977) (illegal fishing in the contiguous zone of the United States).

**60.** *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

margins for error, are limiting the exercise of their constitutional rights, rights which Congress could not have taken away.

## B. Necessity of Severe Penalties to Protect the Public from Harm

Second, a severe penalty for unintentional violations is justified when the harm to the public interest for individual violations is great and the congressional intent is to provide the maximum deterrent against error.[61]

This justification certainly exists here. It must be recognized, however, that a mistake of fact defense would be raised only after a violation has occurred. The question therefore is whether the availability of a mistake of fact defense would seriously undermine the deterrent value of the severe penalty and encourage potential offenders to be less careful to avoid the offense.

In this Court's view, the defense would not seriously undermine the deterrent value. The mistake of fact defense would encourage those engaging in the regulated activity to make a careful investigation to avoid violation.

Denying the defense, however, would discourage careful investigation and instead force those who would undertake the activity to choose between foregoing the activity altogether or doing so with wide margins for error as to the age of those employed. It is the view of this Court that, while forcing this choice upon producers of hard core pornography might be permissible,[62] because of the potential reach of the statute to nonpornographic expressions, denying the defense would affect more than just pornographic expressions.

## C. Notions of Fairness

The third justification for imposing penalties on unintentional acts is that there is no serious affront to notions of fairness when the regulation benefits the public.[63]

A performer's age, however, cannot be determined by simple examination of the performer's appearance. There is no way even to begin to obtain objective verification of age without some information about date and place of birth. Most often it is necessary to rely in this regard upon information supplied by the performer or someone closely related to the performer. The performer therefore is in position to falsify the information and deliberately mislead the inquirer. Furthermore, because Section 2251 regulates pornography so that underaged performers may not be employed, the performer knows that the prospective employer will not engage an underaged performer, and thus the performer has every incentive to falsify the information convincingly.

In this case, the government contends that, even though the statute itself provides the encouragement for the underaged performer to successfully trick an employer who makes a reasonable effort to learn the performer's true age, the employer nonetheless should face a long jail term.

This contention, if accepted, would have potentially troublesome effects. An underaged performer who could succeed in obtaining employment on the basis of falsified age would gain a position of leverage which might be used for many unwholesome purposes.

Representatives of the government itself might even seek to take advantage of this leverage. It is not beyond the realm of fair conjecture that were a zealous law enforcement official to learn that an under-

---

**61.** *See, e.g., United States v. International Minerals & Chem. Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (interstate transportation of corrosive liquids); *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (possession of unregistered hand grenades); *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (misbranded or adulterated drugs); *United States v. Flum,* 518 F.2d 39 (8th Cir.1975), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (attempt to

board airplane with concealed dangerous deadly weapon).

**62.** As previously discussed, it is the view of this Court that hard core pornography would have the lowest level of first amendment protection. *See supra* note 13 and accompanying text.

**63.** Speed limit laws, for example, do not seem unfair. *See also United States v. Engler,* 806 F.2d 425 (3d Cir.1986).

aged performer had successfully gained employment in the pornography industry, the official might choose not to monitor the entire industry in order to protect the underaged performer against him or herself, and to prevent the possibility of a producer committing a crime by mistake. Instead, the official might simply wait and watch for works by this performer to be produced so that he could arrest and prosecute a number of violators and significantly disrupt the entire industry.

It is also conceivable that such a zealous law enforcement official might even encourage or cooperate with such an underaged performer in order to facilitate prosecutions of the pornography industry, for example, by giving the performer a list of employers and asking him or her to report back after each engagement.[64]

To allow an employer to be imprisoned and severly fined based upon a factual error, which might have been the product of trickery and deception, puts a considerable twist on basic notions of fairness. When a factual error made by one who knowingly engages in a regulated activity which could have been abolished, and by mistake of fact seriously injures a strong interest of the "innocent public," it does not seem particularly unfair to punish the person even where the penalty is large. There is a sense of injustice, however, when a person is punished where the "innocent public" is not innocent, but is instead another individual who, by his own connivance, has produced the error, but for which, no crime would have been committed.

The Court believes that this is dispositive. Due process of law at least requires that if a person is to be jailed for a lengthy term for an act taken on the basis of a factual error, the error cannot be one into which the person had been intentionally and convincingly tricked.

On the facts of this case, of course, it is still unknown whether or not Lords or someone close to her intentionally led these defendants into error as to her true age. This is not a case, however, in which the Court may wait to find out the true facts. The government's motion *in limine* would make all of this information inadmissible and the truth would never be known. The government's motion, therefore, must be denied.

## CONCLUSION

Under Section 2251, the government will not be required to prove defendants' knowledge regarding Lords' age at the time of the filming of "Those Young Girls." Accordingly, defendants' motion to dismiss the indictment is DENIED.

Defendants will be afforded, however, the defense of a good faith, reasonable mistake of fact as to Lords' actual age. The government's motion *in limine* to exclude evidence regarding defendants' lack of knowledge of the minority status of the victim therefore is DENIED.

IT IS SO ORDERED.

64. The government responds to these concerns in three ways. First, they argue that the law of entrapment prevents law enforcement officials from participating in such schemes. The Court is by no means convinced, however, that the law of entrapment would apply where the government does no more than suggested here. *See generally United States v. Barker,* 546 F.2d 940, 961 (D.C.Cir.1976) (Leventhal, J., dissenting) ("The defense of entrapment, developed as a construction of legislative intent, has been evolved for the case of an otherwise innocent person who has been induced to commit a crime by a law enforcement agent whose purpose was prosecution.") Second, the government urges that law enforcement officers could be expected to put their duty to the underaged performer ahead of any desire which they might harbor to ignore this duty in the interest of a greater good to be had by prosecuting pornography.

Third, the government similarly urges that prosecutors could be trusted not to bring cases in which the proof depended upon the use of an underaged performer whom the police had identified as such and whose performance could have been prevented by timely police intervention.

As to the second and third, the Court is convinced that if law enforcement officials could always be trusted to do the right thing, there need never have been a Bill of Rights.