**UNITED STATES of America, Petitioner,**

v.

**UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES, CALIFORNIA, Respondent.**

**Ronald Renee Kantor, Rupert Sebastian McNee and James Marvin Souter, Jr., Real Parties in Interest.**

**No. 88–7053.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1988.

Decided Sept. 29, 1988.

Ronni B. MacLaren, Asst. U.S. Atty., Criminal Div., Los Angeles, Cal., and Janis Kockritz, U.S. Dept. of Justice, Washington, D.C., for petitioner.

John H. Weston, Cathy E. Crosson, Brown, Weston & Sarno, Beverly Hills, Cal., for real parties in interest.

Richard Green, ACLU Foundation of Southern California, Los Angeles, Cal., for American Civil Liberties Union of Southern California as amicus curiae.

Before CANBY, BEEZER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Defendants are charged with violating 18 U.S.C. § 2251(a) (Supp. IV 1986), which prohibits the production of materials depicting a minor engaged in sexually explicit conduct. We consider whether they may present evidence that they reasonably believed the minor in question was an adult.

536

## Facts

The basic facts are uncontested. In 1984, defendant James Marvin Souter, Jr., a so-called talent agent, hired 16–year–old Traci Lords to appear in a film to be produced by defendants Ronald Renee Kantor and Rupert Sebastian McNee. The film, *Those Young Girls,* was produced on August 2, 1984, and showed Lords engaging in sexually explicit conduct. While the depicted conduct, as described in the briefs, falls far outside the bounds of good taste, the government does not claim that the film is obscene under the standard of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Rather, the theory of the prosecution, founded on solid Supreme Court authority, is that defendants may be punished for producing nonobscene films that depict minors engaging in sexually explicit conduct. *See New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

Defendants do not dispute the government's theory, nor do they suggest that Lords was in fact an adult. They protest only that they were seriously misled. According to their counsel, Lords and her agent perpetrated a massive fraud on what is euphemistically called the adult entertainment industry; purveyors of smut from coast to coast were taken in by an artful, studied and well-documented charade whereby Lords successfully passed herself off as an adult. Defendants proposed to introduce evidence of the charade at trial.

The government moved in limine to bar defendants from presenting this evidence. Because knowledge of the minor's age is not an element of the offense as defined by section 2251(a), the government argued, good-faith mistake could not be a defense. Defendants in turn moved to dismiss the indictment for failure to specify knowledge of the minor's age as an element, arguing that the statute would violate the first amendment and due process if the government were not required to prove scienter as part of its prima facie case.

The district court denied both motions. It concluded that neither the statute, nor due process, nor the first amendment requires the government to prove that defendants knew their subject was a minor. *United States v. Kantor,* 677 F.Supp. 1421, 1426–29 (C.D.Cal.1987). Nevertheless, the court noted that strict liability for criminal offenses appears to be justified only "(1) where the legislature grants the privilege to engage in the activity; (2) where the deterrent effect of a severe penalty is necessary to prevent harm to the public interest; and (3) where basic notions of fairness are not upset by criminal conviction." *Id.* at 1433. Finding that the first condition did not apply and the other two cut in favor of permitting a reasonable mistake of age defense, the district court ruled that defendants would be allowed to present their evidence.

The government has petitioned for a writ of mandamus; defendants Kantor and McNee, whose trial has been stayed by the district court pending our disposition of the government's petition, have entered an opposition arguing that the statute should be interpreted to require the government to prove scienter as to age in its prima facie case or, at least, to permit defendants to prove reasonable mistake of fact as an affirmative defense.[1] Because the case presents a novel and difficult issue of substantial significance, we set the case for oral argument.

## Discussion

### I

■ The government asks us to issue a writ of mandamus vacating the district court's order allowing admission of evidence as to defendants' mistake of fact. *See* All Writs Act, 28 U.S.C. § 1651 (1982). Mandamus is extraordinary relief; we do not issue it lightly. *See Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976).

---

1. Defendant Souter pleaded guilty on March 31, 1987. His sentencing has been continued, and counsel has indicated that if defendants prevail before us, Souter will move to withdraw his plea and stand trial.

We have identified five factors to guide our exercise of the mandamus power:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal.... (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. United States District Court,* 557 F.2d 650, 654–55 (9th Cir.1977) (citations omitted); *see also Armster v. United States District Court,* 806 F.2d 1347, 1352 (9th Cir.1986). Mandamus is appropriate even though the five factors do not all point in the same direction; indeed, only rarely will both of the last two factors be present. *United States v. Harper,* 729 F.2d 1216, 1222 (9th Cir.1984).

The government's claim that the district court has permitted an inappropriate criminal defense presents a paradigmatic case for mandamus. An order allowing admission of evidence is not subject to interlocutory appeal under 18 U.S.C. § 3731 (Supp. IV 1986). *United States v. Booth,* 669 F.2d 1231, 1240 (9th Cir.1981). Moreover, it is unlikely that an error will be correctable by any other means: If defendants are acquitted, the government will be barred by the double jeopardy clause from raising the issue by way of appeal. *See Sanabria v. United States,* 437 U.S. 54, 68–69, 98 S.Ct. 2170, 2180–81, 57 L.Ed.2d 43 (1978). The issue would, of course, be equally unreviewable in case of conviction because the government would not have been prejudiced by the claimed error. *See United States v. United States District Court (De Lorean),* 717 F.2d 478, 481 (9th Cir.1983) (issuing mandamus to correct error "capable of repetition but without opportunity for review").

In addition, the district court's order clearly raises a new and important issue of first impression. " ' "[A]dvisory" mandamus ... may issue to clarify novel and important questions of law ... [that are] likely to confront a number of lower court judges in a number of suits before appellate review is possible.' " *Armster,* 806 F.2d at 1352 (quoting *National Right to Work Legal Defense & Educ. Found., Inc. v. Richey,* 510 F.2d 1239, 1243 (D.C.Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975)); *see also In re EEOC,* 709 F.2d 392, 395 (5th Cir.1983) (approving use of mandamus "as a one-time-only device to 'settle new and important problems' that might have otherwise evaded expeditious review") (quoting *Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964)); *EEOC v. K–Mart Corp.,* 694 F.2d 1055, 1061 (6th Cir.1982). Mandamus is an appropriate vehicle for settling the law in this case before trial and thereby avoiding uncertainty in this or any other prosecution under section 2251(a).

## II

■ Our initial inquiry is whether scienter as to age is an element of the offense that the government must establish as part of its prima facie case. As always, we begin with the language of the statute:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (Supp. IV 1986). The statute sets the age of majority at 18. 18 U.S.C. § 2256(1) (Supp. IV 1986). On its face, section 2251(a) requires only that a defendant arrange for a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction, and that there be a nexus to interstate commerce.

The defendant's awareness of the subject's minority is not an element of the offense. This omission was quite clearly deliberate. Both Houses of Congress originally considered bills making it unlawful for any person "knowingly" to employ, entice or coerce a minor to engage in sexually explicit conduct for the purpose of producing or promoting a film or other print or visual medium. Department of Justice representatives urged deletion of "knowingly" so as to avoid the inference that producers could be prosecuted only if they knew the minor's age. Assistant Attorney General Patricia M. Wald stated as follows in a letter to the Senate Judiciary Committee:

> Unless "knowingly" is deleted here, the bill might be subject to an interpretation requiring the Government to prove the defendant's knowledge of everything that follows "knowingly", including the age of the child. We assume that it is not the intention of the drafters to require the Government to prove that the defendant knew the child was under [the age of majority] but merely to prove that the child was, in fact, less than [the age of majority].

S.Rep. No. 438, 95th Cong., 1st Sess. 29 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 40, 64; *see also* H.R.Rep. No. 696, 95th Cong., 1st Sess. 21–22 (1977) (statement of Deputy Assistant Attorney General John C. Keeney). Expressly adopting this view, the House of Representatives struck "knowingly" from its bill. *See* H.R.Rep. 696, at 12 (citing *United States v. Hamilton*, 456 F.2d 171, 172 (3d Cir.) (federal statute punishing transportation of a minor in interstate commerce for the purpose of engaging in immoral practices does not require knowledge of minor's age), *cert. denied*, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972)). The conference committee accepted the House version "with the intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child." H.R.Rep. No. 811, 95th Cong., 1st Sess. 5 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 69, 69; S.Rep. No. 601, 95th Cong., 1st Sess. 5 (1977). There is thus little doubt that knowledge of the minor's age is not necessary for conviction under section 2251(a). *See United States v. Reedy*, 632 F.Supp. 1415, 1423 (W.D.Okla. 1986), *aff'd*, 845 F.2d 239 (10th Cir.1988).

## III

Defendants concede that section 2251(a) also does not, on its face, make reasonable mistake of age an affirmative defense. Nevertheless, they contend that we must construe the statute as implicitly providing for such a defense in order to save it from constitutional infirmity. Specifically, they argue that the defense is required by the free speech and press clause of the first amendment, and by the due process clause of the fifth amendment. We need consider only the first of these.

A. We begin by acknowledging that the statute at issue regulates speech, albeit speech that is not protected by the first amendment. *See Ferber*, 458 U.S. at 763–64, 102 S.Ct. at 3357–58. Because protected and unprotected speech are "often separated ... only by a dim and uncertain line," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963), however, we must be careful to ensure that, in regulating unprotected speech, Congress does not also chill speech that is protected. *See Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 505, 508, 104 S.Ct. 1949, 1962, 1963, 80 L.Ed.2d 502 (1984) (the Court must "confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited"). As the Supreme Court stated in *Smith v. California*, 361 U.S. 147, 152–53, 80 S.Ct. 215, 218–19, 4 L.Ed.2d 205 (1959), "[t]here is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller."

As noted, no one claims that *Those Young Girls* is obscene; the film would therefore enjoy the protection of the first amendment were it not for its depiction of a minor. The age of the subject thus de-

fines the boundary between speech that is constitutionally protected and speech that is not. The question we must resolve is whether Congress may subject a defendant to strict liability for misjudging the precise location of that boundary.

Our answer starts with *Smith v. California.* The Supreme Court there struck down an ordinance that imposed criminal liability on a bookseller for possession of an obscene book. The Court noted that legal doctrines such as strict liability, although generally constitutional, "cannot be applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Id.* at 151, 80 S.Ct. at 217. The Court feared that a bookseller, faced with strict criminal liability, would

> tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature.... The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorship, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene and not obscene, would be impeded.

*Id.* at 153–54, 80 S.Ct. at 218–19. The Court therefore concluded that a distributor could not be punished if he did not have some "knowledge of the contents" of the allegedly obscene material. *Id.* at 153, 80 S.Ct. at 218; *see also Hamling v. United States,* 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974) (prosecution must show that defendant "knew the character and nature of the materials," not that they were legally obscene); *Ginsberg v. New York,* 390 U.S. 629, 643–44, 88 S.Ct. 1274, 1282–83, 20 L.Ed.2d 195 (1968) (af-

firming conviction under statute prohibiting knowing sale of obscene materials to minors where "knowingly" included "reason to know" or "a belief or ground for belief which warrants further inspection or inquiry"); *Mishkin v. New York,* 383 U.S. 502, 511, 86 S.Ct. 958, 965, 16 L.Ed.2d 56 (1966) ("[t]he Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material"). In *Ferber,* the Court noted that the same principle applied to laws banning sexually explicit depictions of minors: "As with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant." 458 U.S. at 765, 102 S.Ct. at 3358 (citing *Smith* and *Hamling* ).

We read these Supreme Court cases as holding that a speaker may not be put at complete peril in distinguishing between protected and unprotected speech. Otherwise, he could only be certain of avoiding liability by holding his tongue, causing him "to make only statements which 'steer far wide[ ] of the unlawful zone.' " *New York Times Co. v. Sullivan,* 376 U.S. 254, 279, 84 S.Ct. 710, 725, 11 L.Ed.2d 686 (1964) (quoting *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)). As the Court noted only this Term, "a rule that would impose strict liability on a publisher for [unprotected speech] would have an undoubted 'chilling' effect on speech ... that does have constitutional value." *Hustler Magazine v. Falwell,* —— U.S. ——, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988).

Section 2251(a) will have precisely this effect, defendants tell us, unless they are permitted to present a reasonable mistake of age defense. They point out that an actor's chronological age cannot be precisely ascertained from his appearance. Some 16– or 17–year–olds may look older and more sophisticated than their peers; 19– or 20–year–olds may look youthful and immature. The Court recognized as much in *Ferber* when it noted that "if it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be utilized." 458 U.S. at

763, 102 S.Ct. at 3357. Age may also be ascertained on the basis of other evidence: birth certificates, driver's licenses or other identification; statements of those acquainted with the actor; reputation in the community. But, defendants argue, none of these sources is infallible: Documents can be, and frequently are, forged; people can be mistaken or lie; reputations may be based on unfounded rumor rather than fact.

Defendants contend that they were the victims of such deceit and misapprehension, proffering a catalogue of materials with which they expect to prove their contention if allowed to address the issue at trial. First, they intend to present photographic and testimonial evidence that Lords appeared physically mature when she made the film (in which she purportedly played an adult), and that her demeanor, sophistication and apparent sexual experience belied her minority. Second, they propose to show that Lords and those responsible for her employment used California photographic identification, other official documents, release forms and statements of her agent and others to misrepresent her age. Third, defendants propose to introduce evidence that Lords was widely understood to be an adult: her prior appearances in the mass-market men's magazines *Penthouse* and *Cavalier* which, according to industry custom and perception, reliably investigate the age of their models; her prior and subsequent appearances in other X-rated films; the nationwide distribution, with apparent impunity, of materials depicting her in sexually explicit activities; and the fact that, despite Lords' popularity and renown, no one learned or suggested that she was a minor until two years after *Those Young Girls*.

This scenario points to a serious dilemma faced by those who produce and distribute adult films: There is no way of being absolutely sure that an actor or actress who is youthful in appearance is not a minor.[2] Even after taking the most elaborate steps to determine how old the subject is, as defendants claim they did here, a producer may still face up to ten years in prison and a $100,000 fine for each count. 18 U.S.C. § 2251(d) (Supp. IV 1986) (first offense). This must be a sobering thought for individuals wishing to cast young adults in sexually explicit films and other materials. Producers will almost certainly be deterred from producing such materials depicting youthful-looking adult actors; such actors may have considerable difficulty in finding producers willing to cast them; audiences wishing to view films featuring such actors would be denied the opportunity. *Cf. United States v. Sherin*, No. 86–CR–480, slip op. at 22 (S.D.N.Y. Jan. 28, 1987) (construing "knowingly" in 18 U.S.C. § 2252 (Supp. IV 1986) to require proof of scienter because distributors, facing strict liability, "would almost certainly censor films depicting adults engaging in sexually explicit conduct").

Our reading of the relevant Supreme Court opinions, particularly *Smith v. California*, suggests that the first amendment does not permit the imposition of criminal sanctions on the basis of strict liability where doing so would seriously chill protected speech. While Congress may take steps to punish severely those who knowingly subject minors to sexual exploitation, and even those who commit such abuse recklessly or negligently, it may not impose very serious criminal sanctions on those who have diligently investigated the matter and formed a reasonable good-faith belief that they are engaged in activities protected by the first amendment. "Freedoms of expression require 'breath-

---

**2.** The dissent suggests that "[i]t would be simple for a pornographer to write his subject's birthplace for a certified copy of the subject's birth certificate." Dissent at 12270. It would be simple, however, only where the pornographer knows the subject's real name. We doubt that an actress using forged documents would use her real name. As our experience with undocumented aliens has shown, document forgery is big business and detecting forgeries can be virtually impossible. *See* Hawkins, *Bogus Documents Now on Sale—$25 and Up*, U.S. News & World Report, Jan. 19, 1987, at 26 ("Border agents now confiscate more than 52,000 counterfeit, forged or illegal immigration documents annually at the main San Diego border crossing alone.").

ing space,'" *Hustler Magazine,* 108 S.Ct. at 880 (quoting *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 772, 106 S.Ct. 1558, 1561, 89 L.Ed.2d 783 (1986)); imposition of major criminal sanctions on these defendants without allowing them to interpose a reasonable mistake of age defense would choke off protected speech.

The result we reach is no doubt counterintuitive. Section 2251(a) is designed to promote "a government objective of surpassing importance," *Ferber,* 458 U.S. at 756–57, 102 S.Ct. at 3354–55; indeed, the protection of our young from sexual abuse may be among the most important functions of a civilized society. At the same time, the first amendment interest we are protecting—the right to produce salacious movies—is intrinsically unworthy of much solicitude.[3] Nevertheless, the first amendment is as close to an absolute as we have in our jurisprudence: Speech shielded by the amendment's protective wing must remain inviolate regardless of its inherent worth. The distaste we may feel as individuals toward the content or message of protected expression cannot, of course, detain us from discharging our duty as guardians of the Constitution. *See, e.g., Cohen v. California,* 403 U.S. 15, 24–26, 91 S.Ct. 1780, 1787–89, 29 L.Ed.2d 284 (1971) (vulgar expression displayed in public courthouse); *Brandenburg v. Ohio,* 395 U.S. 444, 448–49, 89 S.Ct. 1827, 1830–31, 23 L.Ed.2d 430 (1969) (per curiam) (Ku Klux Klan cross-burning); *Collin v. Smith,* 578 F.2d 1197, 1203 (7th Cir.) (neo-Nazi march through Jewish neighborhood), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978).

At oral argument, government counsel suggested for the first time that we need not be too concerned about inhibiting the production of nonobscene blue movies because these do not enjoy quite as much first amendment protection as other types of speech. An incidental burden on that type of expression would therefore be permissible, she argued, even where a similar burden on mainstream protected speech might not be. Unable to provide us with any authority for this proposition, government counsel later submitted a supplemental declaration referring us to "the Supreme Court decision" in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 70–71, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310 (1976). The cited passage states in part as follows:

[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate. . . .

*Id.* at 70, 96 S.Ct. at 2452 (opinion of Stevens, J.). While this passage certainly supports the government's theory, it is not the voice of the Court, merely the view of four Justices. Justice Powell, who provided the fifth vote for the remainder of the *Young* opinion, refused to join this part, noting that "I do not think we need reach, *nor am I inclined to agree with,* the holding in Part III (and supporting discussion) that nonobscene, erotic materials may be treated differently under First Amendment principles from other forms of protected expression." *Id.* at 73 n. 1, 96 S.Ct. at 2453 n. 1 (Powell, J., concurring) (emphasis added). Nor, of course, did the four dissenting Justices agree with the plurality, characterizing its argument as "a concept wholly alien to the First Amendment." *Id.* at 86, 96 S.Ct. at 2460 (Stewart, J., dissenting). Two years later, a majority of the Justices again refused to embrace the notion that the degree of first amendment protection "depend[s] on the Court's judgment as to the value of the protected speech that might be deterred." *FCC v. Pacifica Found.,* 438

---

**3.** This is not to say, of course, that worthier productions will not benefit from the first amendment protections we read into section 2251(a). Many works of substantial artistic or social value requiring the services of young-looking actors—for example, a movie graphically portraying the evils of child abuse or pornography—might never be produced if well-intentioned and scrupulous producers cannot protect themselves against very serious criminal sanctions for inadvertent and reasonable errors. *See Ferber,* 458 U.S. at 747, 102 S.Ct. at 3349.

U.S. 726, 761–62 n. 4, 98 S.Ct. 3026, 3046–47 n. 4, 57 L.Ed.2d 1073 (1978) (Powell, J., concurring); *see id.* at 762–63, 98 S.Ct. at 3047–48 (Brennan, J., dissenting); *see also J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482, 489 (9th Cir.1984) (speech not obscene under *Miller* "is entitled to the highest form of protection afforded by our laws and constitution"), *rev'd on other grounds sub nom. Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985); *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659, 663 n. 10 (8th Cir.1981). Unless and until the Supreme Court speaks otherwise, we are bound to the view that the constitutional wall against government censorship protects this nether region of public discourse as fully as the heartland of political, literary and scientific expression and debate.

B. Having concluded that the first amendment requires a reasonable mistake of age defense, we must next consider whether we have the authority to engraft such a defense onto a statute that does not expressly provide it. In doing so, we are mindful of our responsibility to give the statute a reasonable construction that will, if possible, save it from possible invalidation. *See Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24. However, although we may " ' "strain to construe legislation so as to save it against constitutional attack," ' " we " ' "must not and will not carry this to the point of perverting the purpose of a statute ..." or judicially rewriting it.' " *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 3252, 92 L.Ed.2d 675 (1986) (quoting *Aptheker v. Secretary of State,* 378 U.S. 500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed.2d 992 (1964) (quoting *Scales v. United States,* 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961))).

As noted, the statute is silent on whether reasonable mistake of age may serve as an affirmative defense. Moreover, unlike the question whether scienter should be an element of the government's prima facie case, there is no evidence that Congress considered and rejected the possibility of providing for such a defense. Engrafting such a defense would therefore not require

us "to ignore the legislative will in order to avoid constitutional adjudication." *Schor,* 478 U.S. at 841, 106 S.Ct. at 3252.

Moreover, the federal courts may, in limited circumstances, recognize an affirmative defense where a statute does not expressly provide it. For example, the due process clause supplies a defense in a criminal case where government officials engage in outrageous conduct. *Greene v. United States,* 454 F.2d 783, 786–87 (9th Cir.1971); *see Hampton v. United States,* 425 U.S. 484, 492, 96 S.Ct. 1646, 1651, 48 L.Ed.2d 113 (1976) (Powell, J., concurring in judgment); *id.* at 497, 96 S.Ct. at 1653 (Brennan, J., dissenting); *see generally United States v. Gamble,* 737 F.2d 853, 856–60 (10th Cir.1984). The Court has also recognized entrapment as an affirmative defense, reasoning that, so long as Congress has not clearly indicated to the contrary, "[i]t will always ... be presumed that the legislature intended exceptions to its language which would avoid [injustice, oppression, or an absurd consequence]." *Sorrells v. United States,* 287 U.S. 435, 447, 53 S.Ct. 210, 214, 77 L.Ed. 413 (1932); *see also Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). If the presumption that Congress would not intend "absurd or glaringly unjust results" suffices to justify the affirmative defense of entrapment, *Sorrells,* 287 U.S. at 450, 53 S.Ct. at 215, we may certainly supply a narrow mistake of age defense here in order to avoid constitutional infirmity.

We have little doubt that Congress would prefer section 2251(a) with a reasonable mistake of age defense to no statute at all. Allowing defendants to prove their reasonable, good-faith belief as to the age of an actor would not seriously disrupt the effective operation of section 2251(a), or materially hamper the vital effort to protect minors from sexual abuse. Such a defense would be entirely implausible under most circumstances, particularly in cases involving children or prepubescent teenagers. Even when dealing with older teenagers, a defendant would have a tough row to hoe in convincing a jury that he had

acted with appropriate prudence in ensuring that the actor or actress was an adult. Cases like this one, where the actress allegedly engaged in a deliberate and successful effort to deceive the entire industry, are likely to be exceedingly rare; even in those rare instances, juries may well be skeptical and choose to convict.[4] As to those rare cases where otherwise culpable defendants may be exonerated on the basis of a reasonable mistake of age defense, we can only note that even as compelling a societal interest as the protection of minors must occasionally yield to specific constitutional guarantees. *See Coy v. Iowa,* — U.S. —, — - —, 108 S.Ct. 2798, 2802-03, 101 L.Ed.2d 857 (U.S.1988) (confrontation clause bars use of screen to shield defendant from view of testifying victim of teenage sexual abuse, even though screen was intended to protect the minor from trauma). We are convinced that if put to a choice between a statute that punishes severely the use of minors in sexually explicit materials, subject to a reasonable mistake of age defense, and no such statute at all, Congress would choose the former. Under the circumstances, we conclude that section 2251(a) is susceptible to the type of narrowing construction that would save it from fatal collision with the first amendment.

■ While the district court allowed defendants to present evidence of their reasonable mistake of age, it neither grounded the right to such a defense in the first amendment nor indicated the precise scope of such a defense. *See Kantor,* 677 F.Supp. at 1433. A defense grounded in common law notions of public policy might well be broader than one reflecting a mere constitutional minimum. As we read the constitutional requirement, the defense need be only a very narrow one: A defendant may avoid conviction only by showing, by clear and convincing evidence,[5] that he did not know, and could not reasonably have learned, that the actor or actress was under 18 years of age.[6] We instruct the

---

**4.** Congress was acutely aware of the difficulty of prosecuting cases where the minor fell in the gray zone around the age of majority. The House report on the 1984 amendments indicates that Congress raised the statutory age of majority from 16 to 18 in order to shift the gray zone upward:

> The prosecution for distribution are [sic] most often based solely on the pornography which is the subject of the offense; the children cannot be located. Based on the pictures alone, the prosecution must show that the child is under the age of 16. This is extremely difficult once the child shows any sign of puberty. Raising the age to 16 [sic 18] would facilitate the prosecution of child pornography cases and raise the effective age of protection of children from these practices, probably not to 18 years of age, but perhaps to 16.

H.R.Rep. No. 536, 98th Cong., 2d Sess. 3 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin. News 492, 494; *see also id.* at 14, 1984 U.S.Code Cong. & Admin.News at 505 (statement of Mark M. Richard, Deputy Assistant Attorney General, that "[i]f the law were amended to protect minors under the age of 18, rather than 16, it would be easier to prosecute cases in which 14 or 15-year olds have been sexually exploited, but regarding whom actual proof of age is not available").

**5.** A section 2251(a) defendant who presents a reasonable mistake defense essentially alleges fraud on the part of the underage actor or actress. Clear and convincing evidence is the standard normally used to establish fraud in civil cases. *See Addington v. Texas,* 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); *Woodby v. Immigration Serv.,* 385 U.S. 276, 285 n. 18, 87 S.Ct. 483, 488 n. 18, 17 L.Ed.2d 362 (1966).

While it is unusual to require a criminal defendant to prove an affirmative defense by clear and convincing evidence, *see* C.E. Torcia, 1 Wharton's Criminal Law § 39, at 205 (1978), it is not unheard of. The federal insanity defense, for instance, must be proved by clear and convincing evidence. 18 U.S.C. § 17(b) (Supp. IV 1986). The compelling government interest in enforcing section 2251(a) requires that we craft a reasonable mistake of age defense that is as narrow as possible without sacrificing the first amendment values it is designed to protect.

**6.** Defendants would have us go farther and hold that the first amendment requires the government to prove scienter as part of its case. They rely on the Supreme Court cases holding that the government must carry such a burden in cases involving booksellers and other downstream distributors. *See, e.g., Hamling,* 418 U.S. at 123, 94 S.Ct. at 2910. We do not view these cases as controlling here. Those who arrange for minors to appear in sexually explicit materials are in a far different position from those who merely handle the visual images after they are fixed on paper, celluloid or magnetic tape. While it would undoubtedly chill the distribution of books and films if sellers were burdened with learning not only the content of all of the

district court to adopt this formulation in advising the jury on this issue.

## Conclusion

The writ of mandamus shall issue. The district court's order of November 6, 1987, is vacated and the court is instructed to conduct further proceedings consistent with this opinion.

BEEZER, Circuit Judge, dissenting:

The question we consider is whether Congress constitutionally may subject a person to criminal penalties for employing a minor to engage in sexually explicit conduct in a film intended for distribution in commerce, *see* 18 U.S.C. § 2251(a), regardless of whether that person made a "reasonable mistake" about the minor's age. The touchstone for our inquiry is *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Pursuant to the Supreme Court's teaching in *Ferber*, I would weigh the government's interest in protecting children from sexual exploitation against the possibility of inhibiting expression protected by the first amendment. In my opinion, the balance tips sharply in favor of upholding section 2251(a) as written. Protecting children from sexual exploitation is a compelling government interest, and the statute does not pose a substantial threat of inhibiting protected expression. As a result, the first amendment does not require us to judicially interpose a reasonable mistake defense to section 2251(a).

## I

The law making child pornography a federal crime was the Protection of Children Against Sexual Exploitation Act of 1977, Pub.L. No. 95–225, 92 Stat. 7. The Senate report described what the law was meant to deter: depictions of children "in couplings with their peers of the same and opposite sex, or with adult men and women. The activities featured range from lewd poses to ... rape, incest and sadomasochism." S.Rep. No. 95–438 (1977) (describing pornographic magazines), reprinted in 1978 U.S.C.C.A.N. 40, 43.

In amending this law, by means of the Child Protection Act of 1984, Congress found that "thousands of children" are exploited in child pornography, "including large numbers of runaway and homeless youth." Pub.L. 98–292 § 2, 98 Stat. 204. Congress concluded that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society." *Id.*

Congress intended to protect children like Traci Lords, who try to pass as adults to appear in pornography. Such children are in grave danger of sacrificing their physiological, emotional, and mental health —more in danger insofar as they have begun to accept the sordid world of child pornography as a way of life. These children are inexperienced and uneducated; most important, they lack the foresight we attribute only to adults. Congress has chosen to protect such children against their own immaturity, against the unreasoned, desperate choices children are wont to make.

Section 2251(a) is the strongest protection for such children. It puts the burden on producers of pornography to establish that their subjects are not minors. In particular, the statute does not allow a minor's guile to create a "reasonable mistake" excuse; pornographers must take whatever steps are necessary to establish the age of the subjects they depict—or they must employ different subjects.

## II

The Court in *Ferber* left no doubt about the government interest at stake in a case like ours: "The prevention of sexual exploi-

---

materials they carry but also the ages of actors with whom they have had no direct contact, *see Smith*, 361 U.S. at 153–54, 80 S.Ct. at 218–19, producers are in a position to know or learn the ages of their employees. We note that several states have taken this approach. *See, e.g.,* Ky.

Rev.Stat.Ann. § 531.330(2) (Michie 1985); N.Y. Penal Law § 263.20(1) (McKinney 1980); N.D. Cent.Code § 12.1–27.2–05(1) (1985); Or.Rev. Stat. § 163.690 (1987); Tenn.Code Ann. § 39–6–1138(d) (Supp.1987); Tex.Penal Code Ann. § 43.25(f)(1) (Vernon Supp.1988).

tation and abuse of children constitutes a government objective of surpassing importance." 458 U.S. at 757, 102 S.Ct. at 3354. The Court also provided the measure for the first amendment concern in this case. If section 2251(a) implicates the first amendment, the statute must do so otherwise than by a direct effect on child pornography: the statute must inhibit protected speech. As the Court declared in *Ferber*, while the prevention of sexual exploitation of children is of "surpassing importance," 458 U.S. at 757, 102 S.Ct. at 3355, child pornography itself is not protected by the first amendment. *Id.* at 765, 102 S.Ct. at 3358.

Child pornography is not even pure speech. In *Ferber* the Court compared production and sale of child pornography with activities "which have previously been categorized as involving conduct plus speech." *Id.* at 772, 102 S.Ct. at 3362. The Court observed that in a previous case, *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Court had "examined a regulation involving ... an area not considered 'pure speech,' and thus it was unnecessary to consider the proper overbreadth test when a law arguably reaches traditional forms of expression such as books and films." *Ferber*, 458 U.S. at 771, 102 S.Ct. at 3362. The Court next linked what was "intimated" in *Broadrick* with the question posed "squarely" in *Ferber*:

> As we intimated in *Broadrick*, the requirement of substantial overbreadth extended "at the very least" to cases involving conduct plus speech. This case, which poses the question squarely, convinces us that the rationale of *Broadrick* is sound and should be applied in the present context involving the harmful employment of children to make sexually explicit materials for distribution.

*Id.*

Child pornography falls into the category of "conduct plus speech": the conduct is "the harmful employment of children to make sexually explicit materials"; the speech is "for distribution." This helps explain why, as one critic put it, "The Court has offered particularly skimpy protection for sexually explicit materials in cases where such materials involved children...." Tribe, American Constitutional Law 914 (2d ed. 1988). A child pornography law is akin to a child labor law: both are concerned with the conduct through which a product is made, not with what the product is or the product's effect on consumers. *See id.* at 915. Accordingly, *"Ferber* seems to signal a heightened sensitivity on the Court's part to the harms that pornographic activity can inflict upon *participants." Id.* (original emphasis).

This heightened sensitivity corresponds with greater tolerance for any chilling effect caused by laws against child pornography. In *Ferber* the Court was concerned with an overbroad statute. The Court acknowledged that such a statute may have "the potential to repeatedly chill the exercise of expressive activity." *Id.* at 772, 102 S.Ct. at 3362. Yet, in the context of child pornography, the Court applied the relaxed overbreadth standard of *Broadrick v. Oklahoma:* " 'particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Ferber*, 458 U.S. at 770, 102 S.Ct. at 3361 (quoting *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917). The Court noted that " 'only substantially overbroad laws set up the kind and degree of chill that is judicially cognizable.' " *Id.* 458 U.S. at 772 n. 27, 102 S.Ct. at 3362 n. 27 (quoting Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 859 (1970)).

As the Court indicated in *Ferber*, government "has somewhat more freedom in proscribing works which portray sexual acts ... by children." 458 U.S. at 753, 102 S.Ct. at 3352. Weighing the government interest in protecting children against a possibility of inhibiting expression, the Court struck a balance in favor of children. Pursuant to *Ferber*, laws against child pornography violate the first amendment only when they pose a substantial threat of chilling protected expression.

## III

The expression said to be threatened in this case consists mainly of pornography depicting adults—adult pornography. Section 2251(a) does not pose a substantial threat of chilling such expression.

### A

In most prosecutions of child pornography the subject unmistakably is a child. As the House said in reporting on the Child Protection Act of 1984, "The prosecution for distribution [is] most often based solely on the pornography which is the subject of the offense; the children cannot be located. Based on the pictures alone, the prosecution must show that the child is under the [statutory age of majority]." H.R.Rep. No. 98–536 (1984), reprinted in 1984 U.S.C.C.A.N. 492, 494. Because most prosecutions involve subjects who are unmistakably children, producers of pornography are unlikely to be prosecuted for hiring someone who, though appearing youthful, is not unmistakably a child. This prosecution for hiring Traci Lord is unusual; I would not extrapolate from such a case. Producers of adult pornography, knowing that prosecutions like this one are rare, will not be inhibited from hiring youthful-looking subjects who are not unmistakably children.

Instead, producers will act on their profit motive. Pornography is lucrative. *See* S.Rep. No. 95–438 (1977) (child pornography involves "vast potential profits"), reprinted in 1978 U.S.C.C.A.N. 40, 43. High demand creates a powerful incentive for producers to sell pornography featuring youthful-looking subjects. Employing such subjects, profit-minded producers will not be inhibited by the slim chance of prosecution. *Compare Ferber*, 458 U.S. at 772, 102 S.Ct. at 3362 (discussing "economic incentive" of bookseller).

### B

The main reason producers of adult pornography will not be inhibited inheres in the statute itself. The key to liability under section 2251(a) is the subject's age. By establishing that his subject is an adult, a producer of pornographic materials readily may immunize himself from criminal prosecution.

Age, a chronological fact, is as close to a certainty as we ever encounter. The pornographer acts at his peril if he fails to complete an accurate investigation of the age of subjects he employs to produce sexually explicit materials. An accurate investigation could be based on reputation, first-hand testimony, and especially, documents.

Documents establish age. While documents may be counterfeited, the originals exist somewhere. It would be simple for a pornographer to write his subject's birthplace for a certified copy of the subject's birth certificate. A pornographer might even go see the original himself. By obtaining proof in this fashion, a pornographer could eliminate all doubt about the subject's age.

In light of a pornographer's access to original documents, I reject the notion that a pornographer can never be absolutely sure his subject is not a minor. Inability to rely on documents is an epistemological smoke screen; this court should clear the haze. Recently, when a contract's language was unambiguous, we criticized an approach that calls for skepticism about a party's ability to fix the meaning of words in documents. *See Trident Center v. Connecticut General Life Ins.*, 847 F.2d 564 (9th Cir.1988). Now, when pornographers have ready access to original documents, we should not become skeptical about someone's ability to authenticate those documents.

If documents did not exist, the pornographer still would be safe. The government scarcely has more access to original documents than a pornographer. Yet to prevail in a criminal case under section 2251(a), the government must prove beyond a reasonable doubt that the subject of pornography is a minor. Absence of original documents would be enough to raise a reasonable doubt. In such a case the pornographer need not even establish that his subject is an adult; he need only ensure that a reasonable doubt remains about the subject's age.

## C

Section 2251(a) rarely will be used to prosecute a would-be producer of adult pornography, and any chilling effect would be mitigated by the producer's economic motive. Most important, a producer may insulate himself from liability by consulting original sources to establish his subject's age. Section 2251(a) does not pose a substantial threat of chilling protected expression. As a result, the first amendment does not call for a reasonable mistake defense to section 2251(a).

## IV

*Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), does not indicate, much less compel, such a defense. In *Smith* the Court held that a distributor could not be strictly liable for possessing obscene material. The issue was knowledge of the nature of the material; as the Court suggested in *Ferber,* citing *Smith,* criminal liability for child pornography similarly requires scienter as to the nature of the material. *Ferber,* 458 U.S. at 765, 102 S.Ct. at 3358. The focus of our case, though, is knowledge that a minor is employed, not knowledge of the nature of pornography. Stemming from this basic difference, three factors distinguish this case from *Smith.*

First, in *Smith* the ordinance aimed at obscene matter, which is speech. The public interest was limited to any adverse impact of such speech on voluntary viewers. Here the statute aims at child pornography, which is conduct plus speech. In *Ferber* the Court stressed the compelling public interest regarding conduct—the conduct of children as subjects of pornography. Acknowledging that laws against child pornography run the risk of censorship, the Court compared such laws with laws against obscenity. The Court concluded, "[W]e are persuaded that the States are entitled to greater leeway in the regulation of pornographic depictions of children." *Ferber,* 458 U.S. at 756, 102 S.Ct. at 3354. In *Ferber,* as in this case, the government's greater leeway requires that any chilling effect be substantial for the statute to violate the first amendment.

Second, in *Smith* liability hinged on whether material was obscene, a difficult element to define. A producer of material verging on obscene would be hard-pressed to draw the line between the obscene and non-obscene; to be safe, he might avoid much expression on the non-obscene side of the line. In this case, liability rests on the age of the subject, a readily ascertainable fact. A producer of pornography may clear up all doubt about the age of his subject. Hence a pornographer employing adults will not be inhibited from hiring subjects who verge on being minors.

Third, in *Smith* the defendant was a distributor; here the defendants are producers. A distributor is not in position to know the nature of expressive material, or the age of its subject. A producer is in perfect position to establish the age of his subject; he may ask the subject directly where to obtain documents verifying the subject's age. Having established that his subject is an adult, a producer has no reason to be inhibited from writing the script and directing the actions of his adult performer or from creating expression in the form of adult pornography.

## V

Section 2251(a), which serves a government interest of the utmost importance, does not pose a substantial threat of inhibiting protected expression. The statute as written is constitutional; the first amendment does not call for a reasonable mistake defense. As a practical matter, such a defense offers little benefit at great cost. Finally, for the reasons stated by the district court, section 2251(a) does not violate due process. *See U.S. v. Kantor,* 677 F.Supp. 1421, 1426–28 (C.D.Cal.1987). I would uphold the statute as written.