**UNITED STATES of America, Plaintiff–Appellee,**

v.

**X–CITEMENT VIDEO, INC., Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rubin GOTTESMAN, Defendant–Appellant.**

Nos. 89–50556, 89–50562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1992.

Decided Dec. 16, 1992.

Stanley Fleishman, Fleishman, Fisher & Moest, Los Angeles, CA, for defendants-appellants.

Nancy B. Spiegel, Asst. U.S. Atty., Los Angeles, CA, Janis Kockritz, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before CANBY, KOZINSKI and FERNANDEZ, Circuit Judges.

CANBY, Circuit Judge:

Defendant Rubin Gottesman appeals his conviction, after a bench trial, for violating the Protection of Children Against Sexual Exploitation Act of 1977 ("Act"), 18 U.S.C. § 2251 et seq. (1988). Gottesman was convicted of violating sections 2252(a)(1) and (a)(2) of the Act, which prohibit the distri-

bution, receipt, or shipping of child pornography. Gottesman challenges the Act as unconstitutional, both on its face and as applied. We conclude that the Act is unconstitutional on its face and, therefore, reverse.

FACTUAL BACKGROUND

In 1986 and 1987, an undercover police officer contacted Gottesman, the operator of X–Citement Video, Inc., and expressed interest in buying pornographic videotapes featuring one Traci Lords. The officer stated that he wanted tapes that Lords had made when she was under the age of 18. Gottesman eventually sold two sets of such tapes: the first was a box of 49 tapes that he sold directly to the police officer; the second was a box of 8 tapes that Gottesman sold to the police officer and sent (per the police officer's instructions) to Hawaii.

A federal grand jury indicted Gottesman for distributing, shipping, and conspiring to distribute and ship child pornography in violation of 18 U.S.C. § 2252. After a bench trial, Gottesman was convicted on these counts; the district court sentenced him to 12 months incarceration and ordered him to pay a $100,000 fine.

After he had filed a notice of appeal to this court, Gottesman requested a remand to the district court for reconsideration in light of United States v. Thomas, 893 F.2d 1066 (9th Cir.), cert. denied, 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990), which we granted. Gottesman then asserted before the district court, first, that Thomas had ruled that section 2252 lacked a requirement that a defendant know that he is distributing or shipping child pornography, and, second, that, as construed, section 2252 on its face violates the First and Fifth Amendments to the U.S. Constitution. The district court rejected these arguments and upheld the constitutionality of section 2252.

On appeal, Gottesman contends that: Section 2256 of the Act [1] is unconstitutional

---

1. Section 2256 provides that:
   For the purposes of this chapter, the term—
   (1) "minor" means any person under the age of eighteen years;
   (2) "sexually explicit conduct" means actual or simulated—

   (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
   (B) bestiality;
   (C) masturbation;

on its face because it is vague and overbroad; section 2252 of the Act[2] is unconstitutional on its face because it does not require scienter;[3] and the Act, as applied, violates the First and Fifth Amendments because the tapes at issue are not child pornography. We reject the challenges to section 2256 but agree that section 2252 is fatally defective. Because we conclude that section 2252 is unconstitutional on its face, we do not reach Gottesman's argument about the Act as applied.

## DISCUSSION

I. *Does Section 2256 Render the Act Unconstitutionally Vague and Overbroad?*

A. Is the Act Unconstitutionally Overbroad Because it Raises the Statutory Age of Majority from 16 to 18?

██ Gottesman asserts that section 2256[4] of the Act—its definitional section— is facially unconstitutional because it renders the Act applicable to depictions of those under the age of 18, whereas the statute upheld in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113

(1982), set the age of majority at 16. *See Ferber*, 458 U.S. at 774, 102 S.Ct. at 3363 (rejecting constitutional challenges to statute prohibiting promotion or distribution of sexual performances by children under the age of 16). Gottesman argues that adding two years to the age of majority renders the Act unconstitutionally overbroad. He contends that it is far more difficult to determine when a person is under 18 than it is to determine when he or she is under 16. The result, according to Gottesman, is that distribution of sexually explicit material becomes such a hazardous profession that its practitioners will refuse to handle materials involving persons anywhere near the age of 18, thus restricting protected expression involving, for example, 23- or 25-year-olds.

The Supreme Court stated in *Ferber* that it would invalidate a statute for overbreadth " 'only as a last resort.' ... [T]he overbreadth involved [must] be 'substantial' before the statute involved will be invalidated on its face." *Ferber*, 458 U.S. at 769, 102 S.Ct. at 3361 (citation omitted). Although Gottesman's argument is not

---

(D) sadistic or masochistic abuse; or
(E) lascivious exhibition of the genitals or pubic area of any person;
(3) "producing" means producing, directing, manufacturing, issuing, publishing, or advertising;
(4) "organization" means a person other than an individual;
(5) "visual depiction" includes undeveloped film and videotape;
(6) "computer" has the meaning given that term in section 1030 of this title; and
(7) "custody or control" includes temporary supervision over or responsibility for a minor whether legally or illegally obtained.

2. The relevant portions of Section 2252 provide that:
(a) Any person who—
(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails any visual depiction, if—
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct;
(2) knowingly receives, or distributes any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materi-

als which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if—
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct;

＊  ＊  ＊  ＊  ＊  ＊

shall be punished as provided in subsection (b) of this section.
(b)(1) Whoever violates paragraph (1), (2), or (3) of subsection (a) shall be fined under this title or imprisoned not more than ten years, or both, but, if such person has a prior conviction under this section, such person shall be fined under this title and imprisoned for not less than five years nor more than fifteen years.

3. Gottesman also argues that the indictment was insufficient because it did not allege scienter. In light of our ruling on the constitutionality of the Act, we do not address this issue.

4. Gottesman refers to this section as § 2255. The difference is inconsequential: Section 2255 was recently renumbered as § 2256, and they are otherwise identical.

without some force, we see no basis for concluding that any overbreadth here is sufficiently greater than that attending a 16–year age line to compel a different result. Indeed, we would not lightly hold that the Constitution disables our society from protecting those members it has traditionally considered to be entitled to special protections—minors. Gottesman merely quotes a district court case discussing the Act's raising of the age of majority from 16 to 18, *United States v. Kantor*, 677 F.Supp. 1421 (C.D.Cal.1987), *vacated, mandate granted, United States v. United States District Court for the Central District of California*, 858 F.2d 534 (9th Cir. 1988), and a series of Supreme Court cases that permit "adult" treatment of 16– and 17–year–olds. *See, e.g., Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) (permitting capital punishment for 16– and 17–year–olds). With respect to the former, *Kantor* did state that the Act seemed overbroad, but it also refused to strike down the statute on its face, in light of *Ferber*. With respect to the Supreme Court cases, they merely permit, rather than require, adult treatment of 16– and 17–year–olds. Moreover, they indicate nothing about the substantiality (or lack thereof) of the overbreadth of section 2256. Thus, Gottesman's arguments are far from sufficient to overcome the presumption against invalidating a statute on its face for overbreadth.

B. Does Section 2256 Render the Act Unconstitutionally Overbroad or Vague Because it Substitutes "Lascivious" for "Lewd"?

█ Gottesman contends that section 2256 is overbroad and vague because Congress replaced "lewd" with "lascivious" in defining illegal exhibition of the genitals of children. *See* 18 U.S.C. § 2256(2)(E). In so arguing, he ignores *United States v. Wiegand*, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987), in which we rejected a similar argument, stating that " '[l]ascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller v. Califor-*

*nia* [413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)] and in *Ferber*." *Wiegand*, 812 F.2d at 1243 (citations omitted). We adhere to the view expressed in *Wiegand*.

C. Does Section 2256 Render the Act Unconstitutionally Overbroad or Vague Because it Prohibits Actual or Simulated Bestiality and Sadistic or Masochistic Abuse?

█ Gottesman asserts that section 2256 is overbroad and vague because it includes among the covered acts, without further definition, actual or simulated bestiality and sadistic or masochistic abuse. 18 U.S.C. § 2256(2). This argument was essentially answered in *Ferber*, which upheld the constitutionality of a similar statute. The relevant section of the statute at issue in *Ferber* defined the prohibited sexual conduct as " 'actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.' " 458 U.S. at 751, 102 S.Ct. at 3351.

Gottesman focuses on three differences between section 2256 and the statute in *Ferber*: First, he argues that section 2256's prohibition of "simulated" acts renders it overbroad and vague. The statute in *Ferber* also prohibited "simulated" acts, however, and the structure of the sentence suggests that "simulated" modified all the acts on the list. Thus, there is no meaningful distinction between section 2256 and the *Ferber* statute in this regard. Second, Gottesman focuses on section 2256(2)(D)'s alleged inclusion of "sadistic or masochistic; abuse." The semicolon before "abuse" is a typographical error in the unofficial code, however; the official version of section 2256(2)(D) states "sadistic or masochistic abuse." *Compare* 18 U.S.C. § 2256(2)(D) (1988) *with* 18 U.S.C.A. § 2256(2)(D) (West Supp.1992). The only difference between section 2256 and the *Ferber* statute, therefore, is the former's replacement of "sado-masochistic abuse" with "sadistic or masochistic abuse." The two terms are indistinguishable. The final difference that Gottesman cites is that the *Ferber* statute prohibited "sexual bestiali-

ty," whereas section 2256 refers only to "bestiality." Gottesman suggests that, under section 2256, "bestiality" could be read to encompass its entire dictionary definition, so that it would also prohibit, e.g., "the display, gratification, or an instance of bestial traits or impulses." *Webster's International Dictionary* (3rd ed. 1966). In context, however, such a reading would not be justified; "bestiality" is listed as a subcategory of "sexually explicit conduct." The term can hardly be interpreted to mean "acting beastly"; properly construed, the term is no different from *Ferber's* "sexual bestiality."

Thus, we reject all of Gottesman's vagueness and overbreadth challenges to the Act.

## II. *Does Section 2252 Render the Act Unconstitutional Because it Does Not Require Proof of Scienter that the Materials Distributed Are Child Pornography?*

Gottesman's other facial challenge to the Act is that section 2252—the section prohibiting, *inter alia*, the distribution or receipt of child pornography—violates the guarantee of free speech under the First Amendment and the guarantee of due process under the Fifth Amendment because it does not require that the prosecution demonstrate the defendant's knowledge of the age of the performers. Gottesman argues that: (1) section 2252 does not include a scienter requirement regarding the minority of the performers; and (2) the lack of a scienter requirement violates the First and Fifth Amendments to the Constitution.

### A. What Showing of Scienter Does Section 2252 Require?

██ The main point of contention between the parties is over the scienter requirement of section 2252. Gottesman contends that section 2252 does not require knowledge of the minority of the performers, whereas the government argues that section 2252 requires knowledge of "the nature and character of the material." The government's position is a bit cagey; it suggests at times that the statute requires

that the distributor know that the material is child pornography, but argues that it does not require that the distributor know the age of the performers. Of course, it would make no difference under any construction of the statute if the defendant did not know precisely whether the underage performer was age 6, 7 or 8. What the government seems to be saying in its brief, however, is that the statute does not even require that the defendant know that one or more performers was under the age of 18, so long as he knew the general nature of the materials he was distributing.

We ruled on the question of the scienter required by the Act in *Thomas*, in which the defendant was accused of violating section 2252. *Thomas*, like Gottesman in the instant case, argued that section 2252 requires knowledge of the minority of the performer, and that, therefore, the indictment was insufficient because it failed to allege that Thomas knew that the pornography he transported depicted a minor. After setting forth section 2252, we stated that

> In subsection 1, "knowingly" modifies only "transports or ships." In subsection 2, "knowingly" modifies only "receives." *The section [2252], therefore, does not require that Thomas knew that the pornography he transported, mailed, and received involved a minor. The section requires only that Thomas knowingly transported and received the material.*

893 F.2d at 1070 (emphasis added). Thus, *Thomas* held that section 2252 does not require knowledge that the material involves a minor. In fact, *Thomas* indicates that section 2252 does not require any knowledge of the contents of the material; the only scienter requirement of section 2252 is the defendant's knowledge that he mailed the material.

The government does not attempt to distinguish *Thomas*, but rather relies on *United States v. Moncini*, 882 F.2d 401 (9th Cir.1989). In *Moncini*, the defendant argued that section 2252 requires the government to prove that a defendant knew that mailing child pornography was illegal. We

rejected this argument, stating that "[s]ection 2252(a) requires that the government prove that the defendant had knowledge of the nature of the contents of the visual depictions and that the depictions were to be transported or shipped," but that no more was required. *Id.* at 404. Thus, we held that section 2252 did not require knowledge of the illegality of mailing child pornography. *See also United States v. Brown,* 862 F.2d 1033, 1036 (3rd Cir.1988) (under section 2252 "recipient need only know that the material he receives is child pornography").

The problem with the government's reliance on *Moncini* is that its statement that knowledge of the contents is required is dictum. In *Moncini,* the question before us was whether section 2252 requires knowledge of the illegality of the mailings; the statement regarding knowledge of the contents was unnecessary to our ruling. In *Thomas,* on the other hand, the defendant squarely raised the question of whether section 2252 requires knowledge that the performers are under the age of 18. Our statement that section 2252 requires no such knowledge constituted part of our ruling. Thus, *Thomas* is the only precedent from this circuit on the question of whether section 2252 requires scienter of the minority of the performers. We are bound by its conclusion that section 2252 contains no such requirement.

### B. What Level of Scienter Does the Constitution Require?

Gottesman contends—and the government does not dispute—that a statute prohibiting the distribution of printed or taped materials that does not require some knowledge of the contents of the material violates the First and Fifth Amendments of the U.S. Constitution. The Supreme Court so ruled in *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). In *Smith,* the Court held that the First Amendment prohibits prosecution of a book distributor for possession of an obscene book unless the distributor has "knowledge of the contents of the book." 361 U.S. at 153, 80 S.Ct. at 218. *See Ferber,* 458 U.S. at 765, 102 S.Ct. at 3358 ("As with obsceni-

ty laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant."); *see also Osborne v. Ohio,* 495 U.S. 103, 115, 110 S.Ct. 1691, 1699, 109 L.Ed.2d 98 (1990) (noting "the requirement laid down in *Ferber* that prohibitions on child pornography include some element of scienter").

The *Smith* opinion did not delineate the level of scienter that the Constitution requires. In *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and *Ripplinger v. Collins,* 868 F.2d 1043 (9th Cir.1989), however, the constitutional requirements were clarified somewhat. In *Hamling,* a defendant convicted of distributing obscene material argued that the government was required to prove that he knew that the material was obscene. The Supreme Court, in rejecting this argument, stated that: "It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials." *Hamling,* 418 U.S. at 123, 94 S.Ct. at 2910. We applied *Hamling* in *Ripplinger,* finding a statutory definition unconstitutional on its face because it did not require actual knowledge of the contents of the pornographic material. In so ruling, we indicated that a statute must require knowledge of the character of the materials in order to pass constitutional muster. *Ripplinger,* 868 F.2d at 1056.

In purporting to apply these principles here, the government once again skates a very fine line in its brief. It concedes that, to be constitutional, the statute must require knowledge of the nature and character of the material, and it sometimes formulates this requirement as knowledge that the material is "child pornography." On the other hand, it appears to resist a requirement of proof that the defendant know that one or more performers were underage. It emphasizes that the Constitution does not require knowledge by the defendant of the actual age of the underage performer. Of course that must be true. The question, however, is whether it requires knowledge that one or more per-

formers was under age 18. In at least part of its argument, the government seems to suggest that there is no such requirement:

Thus, the scienter required by the child pornography statutes is analogous to that required for obscenity convictions—general knowledge of the nature of the contents of the materials, not knowledge of the specific age of the minor. *See also United States v. Thomas*, 893 F.2d 1066, 1070 (9th Cir.1990) (section 2252(a) does not require proof that defendant knew that pornography involved a minor)....

Government's brief, p. 17. At oral argument, the government moved away somewhat from this perch and conceded that the statute would have severe constitutional problems if it did not include a requirement of knowledge that at least one performer engaged in the specified sexually explicit acts was under 18 years of age.

Whatever the government's position, we conclude that the constitutional minimum requirement of scienter for the Act's proscription of transporting or receiving child pornography is knowledge that at least one of the performers is under age 18. It is true that, in *Hamling*, it was not necessary that the violator know that the material he was distributing was obscene. But the Supreme Court's point was that it was not essential that the violator know the *legal* status of the materials; he could not "avoid prosecution by simply claiming that he had not brushed up on the law." *Hamling*, 418 U.S. at 123, 94 S.Ct. at 2911. The question before us does not concern the defendant's requisite knowledge of the law; it concerns his knowledge of a particular fact—the underage of the performer.

Our decision in *United States v. United States District Court for the Central District of California*, 858 F.2d 534 (9th Cir. 1988), is highly instructive. There we dealt with charges under section 2251(a) of the Act against producers of films also featuring the redoubtable Traci Lords; the issue was whether the producers were entitled to an affirmative defense that they were deceived by Lords into believing that she was an adult. We held that the First Amend-

ment required that provision for such a defense be engrafted onto the Act. *Id.* at 538–44. We declined to hold, however, that the Constitution required knowledge of the minority of the performer to be an element of the offense. Our reasons for so declining are most relevant here:

Defendants would have us go farther and hold that the first amendment requires the government to prove scienter as part of its case. They rely on the Supreme Court cases holding that the government must carry such a burden in cases involving booksellers and other downstream distributors. *See, e.g., Hamling*, 418 U.S. at 123, 94 S.Ct. at 2910. We do not view these cases as controlling here. Those who arrange for minors to appear in sexually explicit materials are in a far different position from those who merely handle the visual images after they are fixed on paper, celluloid or magnetic tape. While it would undoubtedly chill the distribution of books and films if sellers were burdened with learning not only the content of all of the materials they carry but also the ages of the actors with whom they have had no direct contact, *see Smith*, 361 U.S. at 153–54, 80 S.Ct. at 218–19, producers are in a position to know or learn the ages of their employees. We note that several states have taken this approach....

*Id.* at 543–44 n. 6. These considerations concerning distributors or receivers are directly applicable here, and we find them compelling. Section 2252 potentially applies to all kinds of recipients or distributors of videotapes and magazines. To render them all prima facie criminals if one of the performers in a portrayal of sexually explicit conduct is underage, without the distributor's or recipient's knowledge, would be to create precisely the kind of chilling effect condemned by *Smith*. That we cannot do consistently with the First Amendment as the Supreme Court has interpreted it.

We conclude, therefore, that the First Amendment mandates that a statute prohibiting the distribution, shipping or receipt of child pornography require knowl-

edge of the minority of the performers as an element of the crime it defines. Section 2252, as authoritatively construed by *Thomas*, does not so require.

■ The question then arises whether, in the face of *Thomas*, we could construe section 2252 so as to save its constitutionality. In *District Court*, we engrafted an affirmative defense onto section 2251(a) in order to save it. Despite that example, we do not feel free to follow an analogous course here. First, it comes closer to judicial rewriting of a statute to engraft onto it an element of the crime than .it does to recognize an affirmative defense, of a type that often exists without being specified in the statute defining the crime. *See District Court*, 858 F.2d at 542. Second, *Thomas* decided the precise question whether knowledge of the performer's underage was an element of 2252, and it cited *District Court* for the analogous proposition that scienter was not an element of section 2251. *Thomas*, then, was decided in full knowledge of *District Court* and its rationale. *Thomas* nevertheless · ruled squarely that scienter of the minority of the performer was not an element of the crime defined by section 2252. Not sitting as an en banc court, we regard ourselves as bound by *Thomas*'s interpretation.

CONCLUSION

In summary, then, we conclude that the First Amendment to the United States Constitution mandates that a statute prohibiting the distribution, shipping or receipt of child pornography require as an element knowledge of the minority of at least one of the performers who engage in or portray the specified conduct. Section 2252, as authoritatively construed by *Thomas*, does not so require. As a result, section 2252 is unconstitutional on its face. Gottesman's conviction therefore cannot stand.

REVERSED.

* Strictly speaking, this is a concurrence, because I too would reverse Gottesman's conviction on the ground that he was tried under a theory which imposed strict liability as to the age of the minor. I style it a dissent, however, because

KOZINSKI, Circuit Judge, dissenting in part.*

What makes this case hard is that most of the materials defendant distributes are protected by the First Amendment. The thought that someone in his position might be convicted, despite an innocent mind, because of a short scene in one videotape among the thousands he carries in stock, should give pause to anyone concerned about free speech. I therefore agree with my colleagues that a child pornography statute must contain a mens rea requirement. But I do not agree that Gottesman must have *known* the videos he sold depicted child pornography; recklessness on his part would have sufficed. Moreover, under our traditional rules of construction, we can read a recklessness mental state into the statute, to bring it in line with the Constitution. Indeed, we have a duty to do so.

I

Part II(B) of the majority opinion answers the question: "What level of scienter does the Constitution require?" It concludes that a defendant in a child pornography case must be proven to have "knowledge of the minority of at least one of the performers." Maj. op. at 1292. In reaching this conclusion, the majority relies on *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), which holds that, under a child pornography statute, "[a]s with obscenity laws, criminal responsibility may not be imposed without *some* element of scienter." *Id.* at 765, 102 S.Ct. at 3358 (emphasis added). But *Ferber* did not say what level of scienter is sufficient in a child pornography case— whether it be purposefulness, knowledge, recklessness, negligence, or something else altogether.

The Supreme Court answered this question eight years later in *Osborne v. Ohio*,

I would avoid striking down an Act of Congress, and would remand for a retrial under a statute properly narrowed to comply with constitutional norms.

495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). *Osborne* upheld a statute that outlawed the possession of child pornography where the defendant either knew the performers were underage or was at least reckless as to this fact. The Court considered Osborne's argument that the statute was "unconstitutionally overbroad because it applied in instances where viewers or possessors lack scienter," and rejected it because "[a]lthough [the challenged statute] does not specify a mental state, Ohio law provides that recklessness is the appropriate *mens rea* where a statute neither specifies culpability nor plainly indicates a purpose to impose strict liability." *Id.* at 113 n. 9, 110 S.Ct. at 1698 n. 9 (internal quotation marks omitted). Recklessness, the Court held, *"plainly satisfie[d]* the requirement laid down in *Ferber* that prohibitions on child pornography include some element of scienter." *Id.* at 115, 110 S.Ct. at 1699 (emphasis added). The mens rea issue was squarely raised and squarely resolved. I don't understand how the majority can fail to follow—or even address—this passage from *Osborne.*[1]

The majority is led astray by *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and *Ripplinger v. Collins,* 868 F.2d 1043 (9th Cir.1989)—all adult obscenity cases. *Ferber* did indeed refer to the scienter requirement of obscenity cases such as these when announcing a scienter requirement in child pornography cases, but only by way of analogy. 458 U.S. at 765, 102 S.Ct. at 3358. In fact, *Ferber* blazed a trail for child pornography quite separate from that for obscenity. This distinction is rooted in the government's greater power to prohibit child pornography. The *Ferber* Court painfully catalogued the harms sexual exploitation inflicts on children, demonstrating the surpassing importance of the government's interests in this area. *Id.* at 756–62, 102 S.Ct. at 3354–57;[2] *accord Osborne,* 495 U.S. at 109–10, 110 S.Ct. at 1696–97. Because these interests provide a far more compelling basis for prohibiting child pornography than adult pornography,[3] the

---

**1.** *Osborne* might be distinguished because it is a possession case, not a distribution case. However, this distinction cuts entirely the wrong way for the defendant here. Under *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the state has more latitude to proscribe the distribution of materials not protected by the First Amendment than it does when prohibiting their private possession. *Id.* at 568, 89 S.Ct. at 1250 ("States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home.") If recklessness was scienter enough to convict Osborne for his private possession of child pornography, it is certainly enough to convict Gottesman for distributing it.

**2.** The Court recognized that "the distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children," 458 U.S. at 759, 102 S.Ct. at 3355; that "the advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation," *id.* at 761, 102 S.Ct. at 3357; and that "[t]he value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis," *id.* at 762, 102 S.Ct. at 3357. Noting the strength of the government interest in "safeguarding the physical and

psychological well-being of ... minor[s]," *id.* at 756–57, 102 S.Ct. at 3354, the Court said it would "not second-guess [New York's] legislative judgment ... that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child," *id.* at 757–58, 102 S.Ct. at 3355.

The scars of child pornography can last a lifetime. As adults, those exploited as minors may be under pressure to rationalize their conduct, even though they bear no moral responsibility for it. Consider the words of the 24–year old Traci Lords: "I don't think I did anything that special or weird or different. The only difference was that I did it on video. Every teenage cheerleader runs around, screws half the football team, and takes drugs. The major difference is that the evidence of my doing it existed on the shelves of video stores." Michael Kaplan, *The House of Lords,* Movieline, Jan./Feb. 1993, at 71, 72.

**3.** Pornography featuring adults can be regulated to protect unwilling recipients and juveniles from offensive exposure, *Miller v. California,* 413 U.S. 15, 18–19, 93 S.Ct. 2607, 2611–12, 37 L.Ed.2d 419 (1973), and to vindicate society's interest in order and morality, *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 61, 93 S.Ct. 2628, 2637, 37 L.Ed.2d 446 (1973). Because these interests are weaker than that in protecting children from appearing in sexually explicit materi-

Court in *Ferber* cast child pornography outside the umbrella of the First Amendment, without regard to whether the materials in question were obscene. 458 U.S. at 764, 102 S.Ct. at 3358.

All this means that obscenity precedents just don't work in the child pornography context. For instance, private possession of child pornography can be criminalized, *Osborne*, 495 U.S. at 108, 110 S.Ct. at 1695, while private possession of obscene material cannot, *Stanley v. Georgia*, 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969).[4] Similarly, child pornography can be barred even if it doesn't appeal to prurient interests, even if it isn't patently offensive and even without considering the work as a whole. *Ferber*, 458 U.S. at 764, 102 S.Ct. at 3358. *But see Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). Justices Brennan and Marshall, consistent dissenters in the court's major obscenity cases, concurred in *Ferber*. *Compare Miller*, 413 U.S. at 47, 93 S.Ct. at 2627 (Brennan, J., dissenting); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 73, 93 S.Ct. 2628, 2642, 37 L.Ed.2d 446 (1973) (Brennan, J., dissenting), *with Ferber*, 458 U.S. at 775, 102 S.Ct. at 3364 (Brennan, J., concurring).

Just as telling is the Court's more relaxed approach to scienter in child pornography cases. *Osborne*'s one short paragraph in the text, 495 U.S. at 115, 110 S.Ct.

at 1699, and two equally laconic sentences in an omnibus footnote disposing of two unrelated claims, *id.* at 112 n. 9, 110 S.Ct. at 1698 n. 9, stand in stark contrast to other First Amendment cases where the Court agonized at length over the scienter issue. *See, e.g., Smith*, 361 U.S. at 150–55, 80 S.Ct. at 217–20 (scienter required for obscenity prosecution); *Hamling*, 418 U.S. at 118–24, 94 S.Ct. at 2908–11 (knowledge of nature and character of materials rather than knowledge of their legal status as obscenity is proper mental state for obscenity prosecution); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279–83, 84 S.Ct. 710, 725–28, 11 L.Ed.2d 686 (1964) (announcing actual malice requirement in defamation action by public figure); *Masson v. New Yorker Magazine, Inc.*, —— U.S. ——, —— – ——, 111 S.Ct. 2419, 2431–33, 115 L.Ed.2d 447 (1991) (fleshing out actual malice standard as applied to defamatory statements in the form of inaccurate direct quotations).

These distinctions bear out the original observation in *Ferber* that "the States are entitled to greater leeway in the regulation of pornographic depictions of children" than in regulation of obscenity. They cast serious doubt on any analysis that relies on obscenity cases in the child pornography context. *Id.* 458 U.S. at 756, 102 S.Ct. at 3354.[5] *Osborne* is the relevant authority

---

als, the state may prohibit non-obscene child pornography but only obscene adult pornography. *Miller*, 413 U.S. at 23, 93 S.Ct. at 2614.

Of course, many have argued—and many more have disagreed with them—that, just as the child pornography trade harms children, adult pornography harms both the people who appear in the materials, and the people who are hurt by the attitudes these materials foster. But society's interest in avoiding these harms has been held to not justify restricting speech. *See American Booksellers Ass'n v. Hudnut*, 771 F.2d 323 (7th Cir.1985), *aff'd without opinion*, 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). *But see* Catharine A. MacKinnon, *Pornography, Civil Rights, and Speech*, 20 Harv. C.R.–C.L. L.Rev. 1 (1985); Cass R. Sunstein, *Pornography and the First Amendment*, 1986 Duke L.J. 589. *See generally* Gerald Gunther, *Constitutional Law* 1125–26 & n. 1 (12th (wheeled) ed. 1991) (as usual, most of the action is in the footnote).

**4.** "[W]e find this case distinct from *Stanley* because the interest underlying child pornography

prohibitions far exceed the interest justifying the Georgia law at issue in *Stanley*." *Osborne*, 495 U.S. at 108, 110 S.Ct. at 1695.

**5.** For a discussion of the doctrinal isolation of child pornography cases and the need for separate standards to decide them, see Frederick Schauer, *Codifying the First Amendment: New York v. Ferber*, 1982 Sup.Ct.Rev. 285, 287–88 & 308–09:

[*Ferber* created] yet another comparatively distinct area of First Amendment doctrine. The rules relating to child pornography now take their place alongside the equally distinct rules relating to obscenity, defamation, advocacy of illegal conduct, invasion of privacy, fighting words, symbolic speech, and offensive speech. Moreover, each of these areas contains its own corpus of subrules, principles, categories, qualifications, and exceptions.... When we take all this together it becomes clear that the First Amendment is becoming increasingly intricate....

and *Osborne* holds that recklessness is a sufficient mental state to support a conviction in a child pornography case.

## II

A. All of this would be beside the point if, as the majority suggests, *United States v. Thomas*, 893 F.2d 1066 (9th Cir.), *cert. denied*, 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990), conclusively held that 18 U.S.C. § 2252(a) is a strict liability statute. But *Thomas* addressed only a very narrow question: Does section 2252(a), *as a matter of simple statutory construction*, require the government to prove the defendant knew the materials contained child pornography? All *Thomas* tells us is that the word "knowingly" in the statute does not apply to the age of the depicted children. 893 F.2d at 1070. This is not much more than we would learn by reading the statute ourselves. The ruling neither considered nor excluded the possibility that a lower level of scienter, like recklessness, might apply as a matter of *constitutional* interpretation.[6]

The defendant in *Thomas* made no constitutional argument; the *Thomas* court said nothing about the First Amendment. Indeed, had *Thomas* addressed the constitutional issue, it would have been bound by both the Supreme Court's and our own holdings that child pornography can't be a strict liability offense. *Ferber*, 458 U.S. at 765, 102 S.Ct. at 3358; *United States v. United States District Court*, 858 F.2d 534, 540 (9th Cir.1988) ("*Kantor*") (interpreting a different section of the same statute involved here and in *Thomas*). Had *Thomas* considered the First Amendment, it would have had to either follow *Kantor* and read a scienter requirement into the statute, or strike the statute down altogether.

Of course, there is absolutely nothing wrong with the *Thomas* decision. We generally deal only with arguments raised by the parties. *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988). If the defendant did not raise a First Amendment defense, the panel had no obligation to raise it for him. But surely *Thomas*'s failure to decide the constitutional question— how to interpret section 2252(a) in light of the First Amendment—cannot foreclose us from deciding that question now that it's been squarely put to us. *See, e.g., United States v. Vroman*, 975 F.2d 669, 671–72 (9th Cir.1992).

The majority's supine willingness to be bound by a panel that decided a question different from that posed to us leads to truly paradoxical results. Because of an accident of timing—because the first defendant to challenge section 2252(a) neglected to raise a First Amendment claim—section 2252(a) turns out to be unconstitutional. *See* maj. op. at 1291–92. A neighboring section, 2251(a), is saved because the first

*Id.* at 308–09. Schauer generally applauded the Court's segregation of child pornography and obscenity into more distinct categories for purposes of First Amendment scrutiny. However, he presciently flagged as a potential pitfall precisely the kind of mistake the majority makes here: "Extreme subdivision of the First Amendment magnifies the risk that an increasingly complex body of doctrine, even if theoretically sound, will be beyond the interpretative capacities of those who must follow the Supreme Court's lead—primarily lower court judges, legislatures, and prosecutors." *Id.* at 288.

6. My colleagues may be distracted by *Thomas* because of an unfortunate accident of nomenclature. Both statutory construction and constitutional narrowing are sometimes referred to as interpretation. They are, in fact, very different animals. Statutory interpretation is an attempt to divine the meaning of the statute as passed by Congress and signed by the President. Constitutional narrowing seeks to add a constraint to

the statute that its drafters plainly had not meant to put there; it is akin to partial invalidation of the statute. *See, e.g., Regan v. Time, Inc.*, 468 U.S. 641, 652–654, 104 S.Ct. 3262, 3268–70, 82 L.Ed.2d 487 (1984). In performing the former task we may not add anything to the statute that is not already there (or ignore anything that is); in performing the latter function, we must do precisely that. In pure interpretation, we must carry out the legislative will. In performing our constitutional narrowing function, we may come up with any interpretation we have reason to believe Congress would not have rejected. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) (courts should construe statutes to avoid unconstitutionality "unless such construction is plainly contrary to the intent of Congress").

case to consider it did present a First Amendment challenge, giving us the opportunity to narrow it. *See Kantor*, 858 F.2d at 542–44.

Our jurisprudence cannot evolve in such a haphazard fashion. Under the majority's reasoning *no* court would be able save section 2252(a). Not *Thomas* because they had no reason to confront the issue; and not we today because we are bound by *Thomas.* Our prudential rule of avoiding unnecessary consideration of issues not put before us by the parties turns into a trap. Giving preclusive force to the never-contemplated emanations from *Thomas* undermines our duty to save the statute if we can.[7]

B. Because *Thomas* cannot be read to foreclose an issue that it had no reason to reach, it is our job to confront it today: Can we save 2252(a) by reading into it a requirement that defendant here acted recklessly as to the age the minor?[8] Not only can we, we must. *See, e.g., Dennis v. United States*, 341 U.S. 494, 499–501, 71 S.Ct. 857, 862–63, 95 L.Ed. 1137 (1950) (plurality opinion).

Statutes often fail to specify mental states for each element of the criminal offense, and courts routinely read scienter into a statute even absent constitutional considerations. *See Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985); *United States v. O'Mara*, 963 F.2d 1288, 1292–96 (9th Cir.1992) (Kozinski, J., concurring). In *Kantor*, we grafted an affirmative defense of reasonable mistake of age onto the statute, something far more exotic than just reading in a mental state element. Having determined under *Ferber* and *Osborne* that the federal child pornography statute is constitutional if only it includes a mens rea requirement, I would pose the same question here as we did in *Kantor*: Would Congress, if given the choice, have passed section 2252(a) with a recklessness requirement as to the age of the minor, or not passed it at all? *Kantor*, 858 F.2d at 542; *see also Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984) (plurality); *id.* at 691–92, 104 S.Ct. at 3289–90 (Powell, J., concurring). To pose the question is to answer it. Congress

---

**7.** First Amendment challenges to statutes often arise long after the statute is first applied. Title VII, for instance, has for over a decade restricted harassing speech in the workplace, but the first reported federal case involving a First Amendment defense was decided only in 1991. *See, e.g., Henson v. City of Dundee*, 682 F.2d 897, 900–01 (11th Cir.1982); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1534–37 (M.D.Fla.1991); *see generally* Barbara Lindemann & David D. Kadue, Sexual Harassment in Employment Law 592–600 (1992). Because First Amendment defenses were rarely raised, harassment law evolved with little concern for free speech, and some workplace harassment cases seem suspect on First Amendment grounds. *See, e.g., Snell v. Suffolk County*, 611 F.Supp. 521, 531–32 (E.D.N.Y.1985) (injunction banning "any racial, ethnic, or religious slurs ... in the form of 'jokes,' 'jests,' or otherwise," whether or not severe or pervasive enough to create a hostile work environment), *aff'd*, 782 F.2d 1094 (2d Cir.1986); *Tunis v. Corning Glass Works*, 747 F.Supp. 951, 955, 959 (S.D.N.Y.1990) (use of gender-based terms like "foreman" or "draftsman" could be harassment), *aff'd without opinion*, 930 F.2d 910 (2d Cir.1991). For an excellent discussion of the issue, see Eugene Volokh, Note, *Freedom of Speech and Workplace Harassment*, 39 UCLA L.Rev. 1791, 1800–07 (1992) (describing other cases). *See also* Lindemann & Kadue, *supra;* Kingsley R.

Browne, *Title VII as Censorship: Hostile Environment Harassment and the First Amendment*, 52 Ohio St.L.J. 481 (1991); Marcy Strauss, *Sexist Speech in the Workplace*, 25 Harv. C.R.–C.L. L.Rev. 1 (1990).

We may one day conclude that some workplace speech—for instance, a bigoted political poster—is protected even if it creates a hostile work environment. But if this happens, surely the right answer is to save as much of workplace harassment law as we can, not to throw it all out just because a few courts, not faced with First Amendment defenses, may have read it too broadly.

**8.** Which mental state to choose is not entirely clear. In *Kantor*, we stated that "Congress may take steps to punish severely those who knowingly subject minors to sexual exploitation, and even *those who commit such abuse recklessly or* negligently...." 858 F.2d at 540. We know, after *Osborne*, that recklessness is sufficient, but it is not at all clear that a lesser state of mind, such as negligence, would not suffice to save the statute. *Cf.* Robert R. Strang, Note, *"She Was Just Seventeen ... and the Way She Looked Was Way Beyond [Her Years]": Child Pornography and Overbreadth*, 90 Colum.L.Rev. 1779, 1801–02 (1990) (providing mistake of age defense to section 2252 prosecution satisfies First Amendment scienter requirement).

quite clearly viewed child pornography as an extremely grave problem, one deserving sweeping prohibitions and strict sanctions. It is inconceivable that, given the choice between no statute at all and a statute that contains a requirement of recklessness, those involved in passing the child pornography statute would have chosen the former rather than the latter. In drafting the statute, Congress did delete a knowledge requirement, but I do not read this as precluding any and all scienter requirements. Indeed, "we are quite sure that the policies Congress sought to advance by enacting [section 2252(a)] can be effectuated even" after we read a mental state element of recklessness into the statute. *Regan*, 468 U.S. at 653, 104 S.Ct. at 3269.

We must be chary of striking down an Act of Congress, particularly one that promotes interests as vital as protecting children from sexual exploitation. We have already saved section 2252(a)'s companion statute from unconstitutionality by correcting a very similar defect. *Kantor*, 858 F.2d at 542–44. I see no impediment to saving the statute once again; in fact, the second time around should be easier than the first.

## CONCLUSION

After *Osborne*, it's settled that recklessness is a sufficient level of scienter under the First Amendment in a child pornography case; accordingly, I dissent from Part II(B) of the majority opinion which announces a knowledge requirement. Building on this distinct starting point with respect to mental state, I also disagree with Part II(A), which holds that our prior decisions preclude reading a recklessness requirement into section 2252. I join the other parts of the opinion.